MARY ELLEN HAHN

*vs.*

EDWIN B. CLAYBROOK.

*Physicians*: *negligence; limitations; when statute begins to run.*

The Statute of Limitations begins to run as soon as the cause of action accrues, whether the case be one of law or equity.

p. 182

In general, cases of neglect of duty arising from contract and the breach of a professional duty by a physician, surgeon or attorney, falls within the same rule.            p. 182

A line of demarcation exists, however, between actions based upon the violation of some contractual right or duty and those based on the invasion of some other legal right or brought to recover consequential damages resulting from defendant's negligence or wrongdoing independent of any contractual relation.

p. 183

In the latter class of cases the right of action accrues and the statute begins to run either when plaintiff's legal rights have been violated or when actual damage results from defendant's act, according to whether the act of defendant is or is not actionable *per se*.            p. 183

Where the ground of a cause of action was the discoloration of the plaintiff's skin by *argentum oxide,* a drug which she

claimed was prescribed for her by the carelessness and negligence of the defendant while treating her as her physician, it was: *Held,* that when the discoloration began to show the injury was done, and her right of action accrued, and that it was from such a time that the statute began to run.     pp. 186-187

*Decided January 31st, 1917.*

Appeal from the Circuit Court for Allegany County. (HENDERSON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Saul Praeger* and *Isaac Lobe Straus* (with whom was *Fuller Bernard, Jr.,* on the brief), for the appellant.

*James Upshur Dennis* (with *Samuel K. Dennis* and *Walter C. Capper* on the brief), for the appellee.

BRISCOE, J., delivered the opinion of the Court.

This action was instituted in the Circuit Court for Allegany County, on September 20th, 1915, by the plaintiff against the defendant to recover damages for alleged professional negligence and unskillfulness between the years 1904 and 1910, in that the defendant negligently prescribed for the use of the plaintiff a drug, called argentum oxide and which was taken in such quantities, by her as the patient of the defendant, under his direction and treatment, as to cause silver poison, or a disease defined by dermatologists as argyria, which is a chronic pigmentation or discoloration of the skin, due to silver poisoning.

The declaration, in substance avers, that the defendant, between the year nineteen hundred and four and nineteen hundred and ten, negligently, carelessly and without using due care, caution and skill on his part, while holding himself out as a practicing and competent physician in the City of Cumberland, Maryland, and while treating the plaintiff as a patient, negligently and carelessly, and without using due care and caution, treated the plaintiff, and by his negligence, carelessness and lack of skill, caused the discoloration of the skin of the plaintiff to occur in the year nineteen hundred and thirteen and thereafter; and that the plaintiff used due care and caution and followed all the directions given by the defendant to the plaintiff while he was acting as her physician, and has ever since the treatment used due care and caution; and by reason of the negligence, carelessness and lack of skill used by the defendant, the plaintiff has been permanently injured and disfigured and greatly damaged, and claims therefor the sum of twenty thousand dollars ($20,-000.00).

To the declaration the defendant filed two pleas: first, that the cause of action did not accrue within three years. before the bringing of the suit; and second, that he did not commit the wrongs alleged.

The case was tried upon issue joined on replication to the first plea, and traverse to the second plea.

At the conclusion of the testimony upon the part of the plaintiff, the Court below granted the defendant's second and fourth prayers and directed a verdict for the defendant, first, because under the pleadings, there was no evidence legally sufficient to entitle the plaintiff to recover; and second, because there was no legally sufficient evidence that the plaintiff's cause of action accrued within three years prior to the filing of this suit.

If the Court below was right, in granting the defendant's fourth prayer and in ruling that the plaintiff was barred by the Statute of Limitations from maintaining this suit, then,

that disposes of the case and the other questions become immaterial and are unimportant.

The question of the defense of limitations in the class of negligence cases, such as is presented by the record, in this case, is not only one of considerable interest but of importance, and we shall consider and dispose of it, at the threshold of the case.

It is clear and well settled, that if the plaintiff's right of action arose, and accrued more than three years before the suit was begun, then, the relief here sought, must be denied, and this presents the controlling question on this branch of the case, and that is when did the act or wrong occur, from which she sustained the injury for which she seeks damages in this case, and when did that injury become apparent, so as to give the plaintiff a right of action, and to then bring a suit?

The general rule, as to when the Statute of Limitations begins to run, is stated in *Young* v. *Mackall*, 3 Md. Ch. 399, to be, as soon as the cause of action accrues whether it be the case of a trust or not, if it be a fit subject for a suit at law, as well as in equity, the Statute of Limitations begins to run. *Green* v. *Johnson,* 3 G. & J. 390; *Weaver* v. *Leiman,* 52 Md. 708; *Garrison* v. *Hill,* 81 Md. 551.

The general rule, in cases of neglect of duty arising from contract and the breach of a professional duty by a physician, surgeon, or an attorney is held to fall within this rule, and is correctly stated and supported by authority in 25 *Cyc.* 1116, as follows: In cases of negligent performance of a contract or neglect of some duty imposed by contract, the cause of action accrues and the statute begins to run from the time of the breach or neglect, not from the time when consequential damages result or become ascertained; for the cause of action is founded on the breach of duty, not on the consequential damage, and the subsequent accrual or ascertainment of such damage gives no new cause of action. In such cases the form of the action, whether in *case* or *assumpsit,*

is immaterial. A line of demarcation exists, however, between actions based upon the violation of some contractual right or duty and those based on the invasion of some other legal right or brought to recover consequential damages resulting from defendant's negligence or wrongdoing independent of any contractual relation. In the latter class of cases the right of action accrues and the statute begins to run either when plaintiff's legal rights have been violated or when actual damage results from defendant's act, according to whether the act of defendant is or is not actionable *per se.*

Mr. Greenleaf, in his work on *Evidence,* Vol. 2, sec. 433, head Limitations, says: "In actions for official or professional negligence, the cause of action is founded on the breach of duty which actually injured the plaintiff, and not on the consequential damage. Thus, in an action against an attorney for neglect of professional duty, it has been held that the Statute of Limitations begins to run from the time when the breach of duty was committed, and not from the time when the consequential damage accrued." See cases cited by him.

In *Moore* v. *Juvenal,* 92 Pa. St. 484, the Court said: "Where the declaration alleges a breach of duty and a special consequential damage, the breach of duty and not the consequential damage is the cause of action, and the statute runs from the date of the former, and not from the time the special damage is revealed or becomes definite. The loss does not constitute a fresh ground of action, but a mere measure of damages. There is no new misconduct or negligence and consequently there is no new cause of action."

In *Coady* v. *Reins,* 1 Mont. 424, the Court held, in an action for negligence of a physician, that the gist of the action in this instance is the negligence and unskilfulness or breach of duty as laid in the complaint, and not the injury or damage consequent thereon. But the statute in cases of this nature begins to run, regardless of the form of action, whether in *case* or *assumpsit,* from the time of the negligence or breach of duty.

In *Wilcox* v. *Plummer,* 4 Peters, 181, it is distinctly held, that the statute begins to run from the time a right of action accrues and not from the time that the damage is developed or becomes definite. The Court said, the ground of action here is a contract to act diligently and skilfully and both the contract and the breach of it admit of a definite assignment of date. When the party was chargeable with negligence or unskilfulness, his contract was violated and the action might have been sustained at once.

The American and English authorities are numerous upon the doctrine as announced by the cases, we have cited. *Wood on Limitations,* sec. 177, 179; *Aachen & Munich F. Ins. Co.* v. *Morton,* 156 Fed. R. 654; *Fortune* v. *English,* 12 L. R. A. n. s. 1005 and note; *Gould* v. *Read,* 96 Ga. 798; *Granger* v. *George,* 5 B. & C. 149; *Howell* v. *Young,* 5 B. & C. 259.

There are cases involving a class of actions for consequential damages, which hold, that where the breach of duty or other wrongful act, may or may not be legally injurious to the plaintiff, until he has suffered some consequence therefrom, the statute of limitations does not begin to run against the injured person's right of action until some injury or damage has occurred, or the person has suffered some injurious consequence therefrom.

In 19 *Am. & Eng. Ency. of Law,* 2nd ed., 200, after stating the general rule, it is said, where the cause of action is based on consequential as distinguished from direct damage and involves an act of omission which might have proved harmless, the cause of action must be taken as accruing only upon the actual occurrence of damage, so that the statute runs only from that time. This statement of the law is sustained and supported by numerous authorities, cited in Note 7, of the text just quoted and also in 25 *Cyc.* 1136, and cases cited in Note 69 of that work.

In the case at bar we think the plaintiff, upon any aspect of the proof, is clearly barred by the statute of limitations

from maintaining the suit, because her cause of action arose and limitations began more than three years before the 20th of September, 1913, when the suit was instituted.

The plaintiff testified that she employed the defendant as a practicing physician and he prescribed for her from the year 1904, to sometime in the year 1910, and that she called upon him for treatment about three or five times a year, that she consulted other physicians during that period, but that the defendant treated her for indigestion or stomach trouble, that she took his prescriptions as directed three times a day, half hour before meals, and that she had them filled at Truitts and Williamson's drug stores, in Cumberland. She further testified that she did not consult the defendant, after he told her in April, 1910, that she could only be finally cured by an operation, because she feared the operation he advised. She also testified that when she first consulted the defendant, the color of her skin was very fair, but in the latter part of 1908, she noticed a change in the color of her skin, "that I would turn blue around the finger nails and lips and get blue around my nose, would come in spots, but would clear up, would go away, but when I noticed it came and never cleared up again was in 1913," "that in 1909, she began to be right dark at times, it would come and go, it would clear up sometimes; sometimes I would get right dark, but I would not get as I had been before, I had never cleared to my natural color."

The witness testified upon cross-examination as to the time of the change of her color as follows: "Q. How long did you tell Dr. Kelly that your skin had been discolored? A. Well, I told him it had been real bad since 1913. Q. When did you tell him it had begun to be discolored? A. I don't just remember; don't know whether I told him at all or not. Q. How long has it been? A. Well, since my color is changed, that is stays that way, since 1913. Q. Question is, when you noticed it? A. Before that my finger nails and lips turned blue; it would go away sometimes. Q. When

was that? A. 1908. Q. Didn't you tell Dr. Kelly your skin had been dark four years? · A. About that; I believe I did; no doubt I did. Q. And when did you consult him? A. In June. Q. When? A. 1915. Q. And that was a true statement to Dr. Kelly? A. I guess it was; I don't re-member just word for word what I said to Dr. Kelly. Q. And whatever you told him was true? A. I suppose it was."

The witness, S. J. Hahn, the husband of the plaintiff, testi-fied as follows: "Q. When did you first notice your wife's color beginning to change? A. It was about 1908 she com-menced turning around her finger nails, getting blue; she complained to me about her hands getting blue, her fingers. Q. Did she get worse? A. Yes, sir. Q. When did that change take place? A. About 1913 she was at the worst. Q. (By the Court): Question is when she began to get worse? A. She commenced to get worse in 1908; kept get-ting worse all along on up to 1913 she was at the worst."

Miss Whitmire, the sister of the plaintiff, who had lived with her about eight or ten years, testified that she first noticed a change of her sister's color, about the year 1908, that her finger nails and lips would turn blue and she would turn blue around the nose, and was in spots all over her face at times, and this color became permanent in the year 1913.

It would seem, therefore, to be clear and to admit of no doubt, that according to the undisputed evidence in the case, the discoloration of the plaintiff began at least in the year 1908, and as stated by her husband, "she commenced to get worse in 1908, kept getting worse all along on up to 1913, when she was at the worst." The discoloration of her skin of which she complained to her husband in 1908, was a suffi-cient indication of an injury, to have put her upon notice and inquiry, and it is clear from the evidence that if she had exercised ordinary care and diligence to have ascertained her rights she could have discovered the cause of her alleged in-jury.

The ground of the cause of action in this case, was the discoloration of the plaintiff's skin by the use of the drug called argentum oxide, and the statute began to run from the time of the discovery of the alleged injury therefrom. As stated by the Court below, when she began to be discolored that showed an injury and that was the injury of which she had a right to complain. Then was her cause of action, and that was the time when the alleged injury was apparent, and that was more than four years before 1915.

We have examined this case with some care, and are unable to find any objections, that would affect, or would take this case out of the Statute of Limitations. As said by JUDGE MILLER, in *Weaver* v. *Leiman,* 52 Md. 708, mere doubt as to the right or difficulty in the way of its assertion will not do. Apart from the savings and disabilities expressed in the statute itself there must, in order to defeat its operation, be some insuperable barrier or some certain and well-defined exception clearly established by judicial authority. *Green* v. *Johnson,* 3 G. & J. 394.

Being of opinion for the reasons stated that the Court below committed no error in granting the defendant's fourth prayer, which instructed the jury, that the plaintiff's suit was barred by the Statute of Limitations and as this conclusion disposes of the case, the judgment will be affirmed.

*Judgment affirmed, with costs.*