574 A.2d 370

**Estella NEWELL**

v.

**George J. RICHARDS, Jr., et al.**

**No. 1579 Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 6, 1990.

As Amended Aug. 8, 1990.

372

William J. Blondell, Jr. (Edward T. Pinder and William J. Blondell, Jr., Chartered, on the brief), Baltimore, for appellant.

Jonathan E. Claiborne (Whiteford, Taylor & Preston, on the brief), Towson, for appellee, Greater Baltimore Medical Center.

Angus R. Everton (Roy L. Mason, Montedonico & Mason, Chartered, Ronald U. Shaw, Mark A. Wesker, Jeffrey C. Cook and Miles & Stockbridge, on the brief), Baltimore, for appellees, Richards, Hirschfeld & Associates, P.A.

Argued before ROSALYN B. BELL, KARWACKI and WENNER, JJ.

ROSALYN B. BELL, Judge.

Estella Newell, appellant, filed a medical malpractice claim with the Health Claims Arbitration Office (HCAO) against Dr. George J. Richards, Jr., Greater Baltimore Medical Center (GBMC), and Richards, Hirschfeld & Associates, P.A., appellees, on July 25, 1984. On August 4, 1986, based on the statute of limitations, the arbitration panel chairman [1] granted appellees' motion for summary judgment and entered an award of no liability in their favor.

Appellant then filed a Complaint and Action to Nullify the Award and Motion to Vacate in the Circuit Court for Baltimore County. The Motion to Vacate was denied. Each appellee then filed a Motion for Separate Trials [2] which was granted and a Motion for Summary Judgment which was denied. The case went to trial before a jury on the issue of the application of the discovery rule and whether appellant's claim was barred by the governing statute of limitations. The jury found that appellant's suit was filed after the expiration of the statute of limitations; hence, it

---

**1.** We note that the statute does refer to this individual as "panel chairman." Many people might think it more proper to refer to the panel chairperson or chair.

**2.** Although appellees filed motions entitled "Motions for Separate Trials," not motions to bifurcate, the impact was to separate the issues. On appeal, the parties all refer to this aspect of the case as the decision to bifurcate. For the sake of consistency, we will also refer to this as the decision to bifurcate.

was barred.

Appellant's motions for a new trial and judgment notwithstanding the verdict were denied and she appeals, contending:

— appellant was entitled to judgment as a matter of law as there was no evidence from which jurors could find appellant knew, or reasonably could have known, of a wrong caused by appellees prior to July 25, 1981;

— the trial court committed reversible error by placing the burden of proving the affirmative defense of statute of limitations on appellant;

— the trial court erred by allowing appellees to rely on an opinion of a health claims panel chairman which was rendered in excess of his statutory authority, and was therefore a nullity;

— the trial court erred by granting appellees' motion in limine preventing appellant from discussing the sole issue of the trial, the statute of limitations; and by bifurcating trial of merits from limitations; and

— the trial court erred by allowing the medical records concerning an alleged phone call by appellant into evidence.

We disagree with all of appellant's claims and affirm the judgment. We explain.

## FACTS

In July of 1980, Dr. Stanley Rosendorf diagnosed appellant as having cancer of the uterus. As part of her treatment, which began in late October and continued throughout November of 1980, she received a radium implant and radiation therapy. Dr. Richards was responsible for the administration of appellant's radiation therapy. Shortly after appellant started radiation, she began to experience physical problems, such as incontinence, blood in her stool and frequent urination. In early 1981, the additional problem of blood in her urine arose.

In March of 1981, appellant saw her family physician, Dr. Cotter. According to her deposition, appellant was in the habit of telling Dr. Cotter everything that was wrong

with her, though she did not specifically recall whether she had told him about her urinary problems. He advised her that these ailments were probably due to the radiation therapy. GBMC sent appellant to Dr. Razzak, a gastroenterologist, for her bowel problems. Dr. Razzak performed several tests which showed that her colon was not entirely normal. He suspected that appellant's colon problems were caused by her radiation treatment.

According to Dr. Rosendorf's records, on June 17, 1981, appellant telephoned Dr. Rosendorf and asked who she should see for radiation treatment if she was no longer going to see Dr. Richards. Appellant, however, did not recall making this telephone call and testified that it was not until November of 1982, when she went to see Dr. Powder, that she realized something was wrong. She had problems she had "never had before" and was "getting worse." She testified that it was not until her visit to Dr. Powder, where she learned she had a crystallized spot on her bladder which he would have to remove, that she realized she had a potential cause of action against appellees. Appellant filed her claim with the HCAO on July 25, 1984. Since the applicable statute of limitations is three years, in order to have complied with the statute of limitations, appellant must not have known or have had reason to know of her cause of action before July 25, 1981.

## INSUFFICIENCY OF THE EVIDENCE

■ Appellant challenges the trial court's failure to grant judgment on her behalf as a matter of law. She claims there was no evidence from which the jury could have found that she knew or reasonably should have known of her cause of action prior to July 25, 1981, three years before she filed her claim with the HCAO. *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677 (1981) (actual or constructive knowledge of condition required). We disagree.

Preliminarily, the jury did find that appellant knew or reasonably should have known of the existence of her potential cause of action prior to July 25, 1981. It is not the function of this Court to overturn a jury verdict unless no

legally sufficient evidence was presented upon which the jury could have based its decision. *Royal v. State,* 236 Md. 443, 448, 204 A.2d 500 (1964). *See also Ralph Pritts & Sons v. Butler,* 43 Md.App. 192, 199–200, 403 A.2d 830 (1979).

In the case at bar, there was evidence which tended to support the claim that appellant knew or reasonably should have known about her cause of action prior to July 25, 1981. Dr. Razzak testified that his testing of appellant conducted in February and March, 1981 indicated that the radiation therapy was probably the cause of her colon irregularities. A reasonable person could be expected to investigate further whether the radiation treatment was rendered properly. Moreover, there was testimony which showed that appellant had called Dr. Rosendorf's office on June 17, 1981, asking who she should see instead of Dr. Richards. A fact finder could infer from this that she knew Dr. Richards had been negligent in her treatment. In addition, appellant's own daughter, who is a nurse, averred that appellant had complained to her of physical problems associated with the radiation therapy as early as November, 1980. From this evidence, the jury could justifiably find, as it did, that appellant knew or reasonably should have known about her cause of action before July 25, 1981.

Appellant's reliance on *Baysinger v. Schmidt Products Co.,* 307 Md. 361, 514 A.2d 1 (1986), is misplaced. In *Baysinger,* a products liability case, the Court of Appeals reversed the trial court's grant of summary judgment on the issue of when the claimant should have known of her cause of action. The *Baysinger* Court simply held that, since reasonable minds could differ about whether the claimant should have undertaken further investigation concerning the relationship between the intrauterine device and the cause of her infection, summary judgment was inappropriate. In the instant case, the trial judge followed *Baysinger* by not granting appellees' Motions for Summary Judgment and submitting the statute of limitations' issue to the jury.

In addition to *Baysinger,* appellant contends that *Pennwalt v. Nassios,* 314 Md. 433, 550 A.2d 1155 (1988), supports her claim that she was entitled to judgment as a matter of law. We disagree. *Pennwalt* focused on a certified question from the United States District Court for the District of Maryland:

"Whether under the discovery rule, knowledge of the manufacturer's wrongdoing or of product defect is required, in addition to knowledge of possible causation, to trigger the statute of limitations in a medical products liability action."

*Pennwalt,* 314 Md. at 435, 550 A.2d 1155. As appellees observe, the breadth of *Pennwalt* is arguably restricted to product liability cases. Nonetheless, the Court answered the question in the following fashion:

"If the District Court used the word knowledge to mean clear and unequivocal proof that a certain manufacturer's negligence produced a defective product causing the plaintiff's injury, then we would answer the question no. If use of the term knowledge means express or implied knowledge of injury, its probable cause, and probable manufacturer wrongdoing or product defect, then we would answer the question yes."

*Pennwalt,* 314 Md. at 456–57, 550 A.2d 1155. The jury in the instant case found that appellant had implied knowledge, meaning that she had knowledge which would cause a reasonably prudent person to inquire. We have already articulated the evidence produced at trial which supported the jury's finding that appellant had reason to suspect that negligence caused her conditions.

## BURDEN OF PROOF ON STATUTE OF LIMITATIONS

■ Appellant urges that the trial court erred by ruling that she had the burden of proving that she filed her claim before the statute of limitations ran out on her claim. Appellant reasons that, since the statute of limitations is an affirmative defense which appellees had to raise, they therefore have the burden of showing that she did not comply

with the statute. While we do agree with appellant, we conclude that, in view of the posture of this case, the trial court did not err.

The question of where lies the burden of proof when the award of the HCAO is presumed to be correct is addressed by Md.Cts. & Jud. Proc.Code Ann. § 3–2A–06(d) (1974, 1984 Repl.Vol., 1989 Cum.Supp.): [3]

"Unless vacated by the court ... the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, *and the burden is on the party rejecting it to prove that it is not correct.*" (Emphasis added.)

This provision has been analyzed before by Maryland appellate courts.[4] *See Hahn v. Suburban Hosp. Ass'n,* 54 Md. App. 685, 692–93, 461 A.2d 7 (1983). In *Hahn,* the HCAO found Suburban Hospital liable for compensatory damages resulting from the death of Gloria Hahn. Consequently, in accordance with § 3–2A–06(d), we held that the burden of proof on the issue of negligence was imposed upon Suburban. Speaking for this Court, Judge Alpert wrote:

"Similar to a Workmen's Compensation appeal, *sub-section (d) of § 3–2A–06 places the burden of proof upon the party rejecting the award, whether he be plaintiff or defendant.* It establishes no new rule when the plaintiff happens to be the party rejecting the award, as the burden was always upon the plaintiff to prove his case by a preponderance of the evidence. But the statute shifts the burden from the plaintiff to the defendant where the defendant, in effect, loses before the Health Claims Arbitration Panel and rejects the award, requiring the defendant in such a case (after filing an action to

---

**3.** All sections referred to hereinafter are from the Courts and Judicial Proceedings Article unless otherwise specified.

**4.** In *Attorney General v. Johnson,* 282 Md. 274, 280, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), the Court of Appeals mentioned this section and stated that the burden of proving the contrary falls on the party rejecting the award.

nullify the award) to satisfy a jury *by a preponderance of evidence* that the plaintiff is not entitled to the award made by the Panel. Thus, *in the instant case the burden was cast upon Suburban to overcome the presumption that the award of the Panel is correct and it must do this to the satisfaction of the trier of the facts.* Under the circumstances, Suburban had to prove by a preponderance of the evidence that it was not negligent, that indeed, it did comply with the appropriate standards of care as discussed *infra*. By the same token, the plaintiffs were required to prove by a preponderance of the evidence that the damages awarded by the Panel were inadequate." (Citation omitted.) (Emphasis added.) *Hahn*, 54 Md.App. at 693, 461 A.2d 7.

Similarly, in the case at bar, where the HCAO found appellant's cause of action barred by the statute of limitations, the burden was on appellant to overcome the presumption that the decision was correct. Appellant had to prove by a preponderance of the evidence that she did not know or have reason to know of appellees' negligent treatment of her before the required date. The jury found she did have reason to know of her claim before July 25, 1981.

The trial judge gave the following instructions to the jury regarding the burden of proof:

\* \* \* \* \* \*

"Now, you are instructed that the party who asserts a claim, such as the plaintiff in this case, has the burden of proving it by what we call a preponderance of the evidence. Now, to prove by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence means such evidence as when considered and compared with that opposed to it has more convincing force and produces in your minds a belief that it is more likely true than not true. In determining whether a party has met the burden of proof, you should consider the quality of all of the evidence regardless of who called the witness or introduced the exhibit and the number of witnesses which one party or the other may have produced. If you believe

that the evidence is evenly balanced on an issue, then your finding on that issue must be against the party who has the burden of proving it. . . .

* * * * * *

"Now, you are instructed that injury in this case means wrongful harm resulting from the rendering or failure to render health care, and that wrongful harm or wrongly harmed means unusual symptoms or reactions beyond what should reasonably be anticipated as a result of a patient's treatment and overall condition of health.

"The only issues for you to decide in this case are: one, whether prior to July 25, 1981, [appellant] knew that she had been wrongly harmed; and, two, whether prior to July 25, 1981, [appellant] had knowledge of circumstances which ought to have put her as a person of ordinary prudence on inquiry whether she had been wrongly harmed. For it is as of this time, that is when she had knowledge of such circumstances to make inquiry, that she is charged with notice of all facts which an inquiry or investigation would in all probability have disclosed if it had been properly pursued.

"Now, *specifically, as is right on the verdict sheets, copies of which each of you have, you must determine whether [appellant] has proven by a preponderance of the evidence, first, that she did not know that she had been wrongly harmed prior to July 25, 1981; and, second, that she did not have knowledge of circumstances which ought to have put her on inquiry whether she had been wrongly harmed prior to July 25, 1981.*

"Now, Maryland law requires a medical malpractice claim, such as this case, to be first submitted to arbitration before it can be tried in this Court. The claim in this case was submitted to arbitration before the health claims arbitration office. You are instructed that the Health Claims Arbitration Chairman found that [appellant] knew or had knowledge of circumstances that should have put her as a person of ordinary prudence on inquiry whether she had been wrongly harmed prior to July 25, 1981.

"Now, under the law, the decision of the Health Claims Arbitration Chairman is presumed to be correct and the burden is upon [appellant] to prove by a preponderance of the evidence that the decision of the Health Claims Arbitration Chairman is wrong. But I have already told you that [appellant] has the burden in this case in any event to prove to you that [appellant] did not know of her wrongful harm or did not know of circumstances which should have put her on inquiry. That is the burden she carries in any event."

We think that *Hahn*, which none of the parties cited, rather than *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 241, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336, *reh'g denied*, 471 U.S. 1049, 105 S.Ct. 2043, 85 L.Ed.2d 341 (1985), which all parties discuss, is on point. In *Finch*, this Court adopted the memorandum opinion of the trial judge, who said:

"*Under both rules* [the common law rule of discovery and the statutory 'discovery rule'], *the burden is on Plaintiffs to prove that they did not discover the alleged wrong* more than three years before they filed suit and that this lack of discovery was not due to Plaintiffs' unreasonable failure to exercise ordinary diligence." (Emphasis added.)

Appellees rely on this language to support their position that the burden of proof lies with appellant. We do not agree.

We hold that, to the extent this portion of *Finch* can be read to mean that the burden of proof lies with the claimant, under the common law rule of discovery, it is dicta and we would not follow it. Moreover, *Finch* was a fraudulent concealment case where the trial judge ruled that the party asserting fraud had the burden of proving that the statute of limitations should be tolled. This factual scenario is easily distinguished from the case at bar, where fraudulent concealment is not an issue. We agree with appellant that appellees had the burden of proving their asserted affirmative defense. But, as we have already

stated, the presumption of correctness of the panel opinion changed the burden of production at the trial level. At trial, appellant had to prove, by a preponderance of the evidence that the panel opinion was wrong. Thus, the instruction given to the jury was, *de facto*, correct. The error, if any, was harmless.

Moreover, appellant's reliance on *Comptroller v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986), is misplaced. According to appellant, *World Book* stands for the proposition that a party cannot prove a negative. This is not the case: a party can have the burden of proving a negative fact as part of one's cause of action. *Daniels v. Superintendent, Clifton T. Perkins State Hosp.*, 34 Md.App. 173, 180, 366 A.2d 1064 (1976). *World Book* involved a tax assessment which was being challenged on the basis of limitations:

> "By statute, the burden of challenging an assessment as erroneous rests on the taxpayer. Where, however, the assessment is challenged on the basis of limitations, and is, on its face, barred by limitations, the burden is shifted to the Comptroller to demonstrate the applicability of an exception which allows the assessment to be maintained."

*World Book*, 67 Md.App. at 442–43, 508 A.2d 148. Otherwise, the taxpayer would have to keep records in excess of the statutory period in case the Comptroller made an assessment for those years. This language which appellant lifts from *World Book*, however, is not the language which is most apposite to the case at bar. Rather, Judge Alpert, speaking for this Court, stated the simple rule:

> "[A] party relying on a matter in avoidance of the statute of limitations defense bears the burden of proving such a matter where it is shown that the cause of action accrued earlier than permitted by applicable statute."

*World Book*, 67 Md.App. at 444, 508 A.2d 148. Because of the HCAO's decision, appellant was required to prove a negative: she had to show by a preponderance of the evidence that her claim accrued after July 24, 1981 to prove that the panel decision was wrong; otherwise, she could not maintain her cause of action. The trial court properly placed this burden on her.

## HEALTH CLAIMS PANEL OPINION

Appellant claims that the trial court erred by allowing appellees to rely upon the opinion of the Health Claims Panel Chairman. There are two sub-parts to appellant's argument: (1) the panel chairman exceeded his authority by finding that her claim was time-barred; and (2) the decision should not have been read to the jury.

### —Panel Chairman's Authority—

■ According to appellant, the Health Claims Panel Chairman exceeded his authority by making specific findings of fact that appellant had reason to know of a cause of action prior to July 24, 1981.

The issue of the running of the statute of limitations was raised in appellees' motion for summary judgment. Appellant contends that, since the question of when the statute of limitations began to toll is a question of *fact* and "[a]ll issues of fact shall be referred by the Director to the arbitration panel," § 3–2A–05(a), the question should have been submitted to the panel. Section 3–2A–05(a) also mandates that "all issues of law shall be referred by the Director to the panel chairman." Hence, not surprisingly, appellees argue that the panel chairman properly decided the motion for summary judgment on legal grounds as there were no disputes of material fact, and the resolution of the issue of the accrual of limitations is a matter of law. *See, e.g., Russo v. Ascher,* 76 Md.App. 465, 473, 545 A.2d 714 (1988).

There is no question but that the accrual of appellant's cause of action is a factual question. The Court of Appeals has said "that questions of fact on which a limitations defense will turn are to be decided by the jury or, when sitting as a jury, by the court." *O'Hara v. Kovens,* 305 Md. 280, 301, 503 A.2d 1313 (1986). In *Kovens,* the trial judge determined that the testimony of a witness was not credible and granted a motion for summary judgment. The Court of Appeals reversed this Court's affirmance of the trial court's actions. We read *Kovens* to mean that, where the credibility of a witness is involved in establishing facts, the

granting of summary judgment is error. In essence, this is no different from the traditional standard used to determine whether granting summary judgment is appropriate: is there a dispute of material fact?

We see no reason to apply a different standard to the panel chairman. Here, the panel chairman concluded, from the "uncontroverted evidence" presented to him in support of and in opposition to the motion for summary judgment, that a reasonable finder of fact could only decide that appellant was, at the very least, on inquiry notice, if not on actual notice, of her cause of action more than three years before she filed her claim. From the panel chairman's opinion, we conclude that he did not see the determination as one involving an issue of credibility. Unfortunately, appellant did not provide this Court with the materials upon which the panel chairman based his decision. Hence, we must presume that the evidence was, as the panel chairman claimed, "uncontroverted." Assuming this was the case, the Court of Appeals' decision in *McClurkin v. Maldonado*, 304 Md. 225, 234, 498 A.2d 626 (1985), is dispositive:

> "The 1985 emergency bill amending subsection [3–2A–05] (a) was introduced as a response to *Stifler* [*v. Weiner*, 62 Md.App. 19 (1985) ]. Under amended subsection (a) a panel chairman is now authorized, acting alone, to enter an award on an issue of law, *e.g.*, granting summary judgment for the defendants on the basis of a factually undisputed record disclosing that limitations have run." (Citation omitted.)

If the facts which the party making the motion sets forth are not disputed by the adverse party, then there is no dispute as to material facts. Hence, granting a motion for summary judgment would be warranted. *See generally* Rule 2–501. Hence, the panel chairman exercised this then new ability under § 3–2A–05(a) to grant summary judg-

ment. We perceive no error.[5]

### —Reading the Decision to the Jury—

 Appellant claims that the trial judge erred by reading the decision of the arbitration panel chairman to the jury and instructing the jury that the determination was presumptively correct. We disagree.

Section 3–2A–06(d) provides in pertinent part:

> "*Unless vacated by the court ... the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct,* and the burden is on the party rejecting it to prove that it is not correct." (Emphasis added.)

In the instant case, the panel chairman's decision is such an "award," which was not vacated. Consequently, it was both admissible and entitled to a presumption of correctness. As the Court of Appeals has held:

> "The award which is introduced as evidence in the judicial proceeding is to contain the panel's determination of 'the issue of liability.' "

*Su v. Weaver,* 313 Md. 370, 380, 545 A.2d 692 (1988). The *Su* case was a case where the HCAO determined that Dr. Su was liable for his failure to meet the standard of care in the postoperative period, but met the standard of care in his diagnosis and surgical procedures. The decision of the arbitration panel chairman *did* determine the nonliability of appellees based on the expiration of the statute of limitations. There was no error in reading the award to the jury.

### STATUTE OF LIMITATIONS/BIFURCATION

 Appellant argues that the trial court erred by granting appellees' motion *in limine* which precluded appellant from mentioning the statute of limitations and by bifurcating trial of the merits from an initial determination of whether the statute of limitations barred her claim. We disagree.

---

5. This is not to say our decision would have been the same if all the evidence presented to the trial court had been before the panel chairman.

It was entirely proper for the trial judge to conclude that any mention of the limitations period would prejudice the jury. The jury simply needed to decide whether appellant knew or should have known that she had a cause of action before July 25, 1981. Based on the jury's factual determination, the trial judge would then apply the statute of limitations to determine whether appellant could maintain her cause of action. We agree with appellees who observed at trial that telling the jury that, in effect, they were there "to cut off" appellant's rights was not a legitimate consideration.

The decision to bifurcate a trial is within the discretion of a trial judge. Such a decision is subject to the abuse of discretion standard of review. *McGarr v. Boy Scouts of America*, 74 Md.App. 127, 142, 536 A.2d 728 (1988). Primary considerations for application of the rule are convenience and avoiding prejudice. *McGarr*, 74 Md.App. at 142, 536 A.2d 728.

The trial court, pursuant to Rule 2–503, separated the case into two proceedings: (1) whether appellant complied with the statute of limitations, and if so, (2) whether medical negligence existed. There is no question that the bifurcation of the trial served the purpose of Rule 2–503 in that, if the answer to the first question was in the negative, there need be no trial on the second issue. In addition to convenience, judicial economy would also be served. Moreover, we agree with appellees that the jury would have been required to ignore all the evidence concerning appellant's physical problems, which could well have prejudiced appellees.

## MEDICAL RECORD

██ Appellant contends the trial court erred by admitting a medical record concerning her alleged telephone call to Dr. Rosendorf. We disagree.

Section 10–101 provides:

"(a) **Definition of 'business'.**—'Business' includes business, profession, and occupation of every kind.

"(b) **Admissibility.**—A writing or record made in the regular course of business as a memorandum or record of an act, transaction, occurrence, or event is admissible to prove the act, transaction, occurrence, or event.

"(c) **Time of making records.**—The practice of the business must be to make such written records of its acts at the time they are done or within a reasonable time afterwards.

"(d) **Lack of knowledge of maker.**—The lack of personal knowledge of the maker of the written notice may be shown to affect the weight of the evidence but not its admissibility."

This is a codified version of the business record exception to the hearsay rule.

 In the instant case, appellees offered certain documents as exhibits. These documents were properly identified and authenticated by Concetta Varelli as records which were kept in the regular course of a business and were memorialized shortly after the event. The record was part of appellant's whole file, which was properly authenticated. Moreover, appellant, had previously testified that she did not remember calling Dr. Rosendorf to ask whom she should see instead of Dr. Richards. Such evidence was clearly relevant to the issue of what appellant knew and was properly admissible to show that she had made that call.

Appellant points out that Mrs. Varelli did not work for Dr. Rosendorf at the time the record was made. The statute addresses this issue: her lack of personal knowledge of that record affects the weight of the evidence, not its admissibility. § 10–101(d).

 Further, appellant contends that appellees made improper use of the record by trying to create an inference that appellant was "inquiring" about "the wrong" she had suffered. We disagree. Rather, as appellees assert, if there was any error in the admission of the note, it was harmless. If the note was intended to show that she had express actual knowledge, then it could not have affected the result since the jury did not decide this issue. The jury

decided that appellant had implied knowledge, making the issue of actual knowledge irrelevant. The admission of the medical record was proper.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.