594 A.2d 1152

Estella **NEWELL**

v.

George J. **RICHARDS**, Jr. et al.

No. 121, Sept. Term, 1990.

Court of Appeals of Maryland.

Sept. 10, 1991.

Motion for Reconsideration Denied Oct. 24, 1991.

Edward T. Pinder (William J. Blondell, Jr., William J. Blondell, Jr., Chartered, all on brief), Baltimore, for petitioner.

Angus R. Everton (Roy L. Mason, Montedonico & Mason, Chartered, all on brief), Baltimore, Jonathan E. Claiborne (Whiteford, Taylor & Preston, both on brief), Towson, Ronald U. Shaw, Jeffrey G. Cook (Miles & Stockbridge, all on brief), Towson, for respondents.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ., H. CHESTER GOUDY, Jr., Judge of the Fifth Judicial Circuit of Md., Specially Assigned, and ERNEST A. LOVELESS, Jr., Administrative Judge of the Seventh Judicial Circuit of Md., Specially Assigned.

CHASANOW, Judge.

Estella Newell (Newell) filed a claim for medical malpractice with the Health Claims Arbitration Office on July 25, 1984 against health care providers George J. Richards, Jr., M.D.; Richards, Hirschfeld and Associates P.A. (the partnership); and the Greater Baltimore Medical Center (GBMC) (hereinafter collectively Richards). In a two-count complaint Newell alleged that she had sustained injuries as a result of Dr. Richard's negligence in administering excessive and improper radiation treatments and joined the partnership and GBMC on the basis of respondeat superior. In a written opinion, the Health Claims Arbitration Panel chairperson granted the Richards' motion for summary judgment and entered an award of no liability in his favor based on the running of the statute of limitations.

Newell filed a notice of rejection of the award, a complaint and demand for jury trial, and a motion to vacate the award in the Circuit Court for Baltimore County. The motion to vacate the award was denied. Both Newell and Richards filed motions for summary judgment, which were also denied. Richards' motions to bifurcate [1] were granted and the case went to trial on the sole issue of the statute of limitations. At the conclusion of the trial the case was submitted to the jury in the form of a special verdict. The jury decided that Newell had implied knowledge of her injury more than three years before the claim was filed. On this basis, the court ruled that Newell's claim was time-barred. The judgment was affirmed by the Court of Spe-

---

1. Respondents entitled these "motions for separate trials." For clarity, we will call them motions to bifurcate, since the impact was to separate the issues.

cial Appeals in *Newell v. Richards*, 83 Md.App. 371, 574 A.2d 370 (1990).

The Court of Special Appeals ruled on several of Newell's arguments on appeal, including the contention that the trial court committed reversible error by incorrectly placing the burden of proof on Newell to show that the statute of limitations had not run. The Court of Special Appeals held that the trial court did err in placing on the plaintiff the burden of proof on the limitations defense, but that the error was harmless in light of the procedural posture of the case. We granted certiorari to consider two important issues raised by the Court of Special Appeals opinion.

## The Facts

In July of 1980, Estella Newell was admitted to GBMC for post-menopausal bleeding. Newell was diagnosed as having cancer of the uterus and treated by Stanley Rosendorf, M.D. On August 13, 1980, in an attempt to treat the cancer, Dr. Rosendorf and George J. Richards, Jr., M.D., inserted a radium implant into Newell's uterus. The implant did not eliminate the cancer, and on September 30, 1980, Dr. Rosendorf performed a total hysterectomy on Newell. Radiation therapy under the direction of Dr. Richards was prescribed as follow-up treatment to the hysterectomy. Newell received external radiation treatments at GBMC on eighteen separate occasions during the period beginning October 30, 1980 to November 25, 1980. During this time, Dr. Richards was Chief of Radiology at GBMC.

Following the radiation therapy, Newell experienced diarrhea, frequent urination, rectal bleeding, blood in her urine, and blood in her stool on a recurrent basis. Newell testified that she was aware of her urinary and bowel problems and that she related both to the radiation therapy. Dr. Richards testified that the symptoms Newell experienced were usual side effects of radiation treatment, and probably would have been discussed with the patient. Dr. Richards consistently denied throughout the proceedings that the radiation given Newell was improper or excessive.

When Newell complained of her symptoms, GBMC referred her to gastroenterologist Ibrahim Razzak, M.D. In February, March, and August of 1981, Dr. Razzak performed various diagnostic tests on Newell. Dr. Razzak testified that there were several possible causes for the problems Newell was experiencing. According to his records, he first diagnosed Newell as suffering from diverticulosis, a condition which, in Dr. Razzak's opinion, "is not related to radiation therapy." Along with this original diagnosis, Dr. Razzak had written the words "radiation damage" with a question mark on Newell's medical chart. Dr. Razzak testified that he felt Newell's problems may be secondary to radiation. However, he testified that at no time did he advise Newell that her problems resulted from excessive or improper radiation.

Dr. Razzak performed several biopsies, or tests of tissue, on samples taken from the wall of Newell's intestine. The results of the biopsies taken before August of 1981 were read by Dr. Razzak as negative, showing no evidence to confirm that Newell had radiation damage. The biopsy taken in August of 1981 was the first medical confirmation that Newell had radiation damage, according to Dr. Razzak. We should note however, that July of 1981, and not August, is the critical month. If Newell had sufficient knowledge before July 25, 1981 then her lawsuit, which was filed on July 25, 1984, was too late.

Newell stopped seeing Dr. Razzak because she felt she "wasn't getting any better." In November of 1982, she sought care from Dr. James Powder. Dr. Powder discovered a crystallized spot on Newell's bladder and explained to Newell that it was caused by excessive radiation. It is at this time that Newell claims she first discovered her potential cause of action against Richards.

### I. Statute of Limitations In Action
### For Medical Malpractice

Historically, Maryland, as well as the majority of jurisdictions, applied the "date of the wrong" (or time of injury)

rule to pinpoint the date that triggered the running of the statute of limitations. Note, *Poffenberger v. Risser: The Discovery Principle Is the Rule and Not the Exception,* 41 Md.L.Rev. 451, 453, n. 25 (1982) (hereinafter *The Discovery Principle*). Because some injuries are latent or otherwise difficult to discover, the "date of the wrong" rule could have the effect of barring some claims before plaintiffs could discover that a wrong or a resulting injury had occurred.

▇ The discovery rule is an exception that has evolved to avoid this harsh result. Under the discovery rule, a cause of action accrues at the time the plaintiff first knows or reasonably should have known of the alleged wrong. *Poffenberger v. Risser,* 290 Md. 631, 636, 431 A.2d 677, 680 (1981). The development of the discovery rule can be traced to this Court's decision in *Hahn v. Claybrook,* 130 Md. 179, 100 A. 83 (1917). *Hahn* involved a claim for medical malpractice brought by a woman who alleged that she had suffered permanent skin discoloration as a result of her doctor's negligence in prescribing argentum oxide. In that case, the Court held that the plaintiff's claim was barred, but intimated that her right of action accrued when her injury became apparent. *Id.* at 184, 100 A. at 84. Years later, in *Waldman v. Rohrbaugh,* 241 Md. 137, 145, 215 A.2d 825, 830 (1966), this Court clearly articulated the discovery rule and held it applicable to claims for medical malpractice. After *Waldman,* the Court extended the discovery rule to other types of professional malpractice. *See, e.g., Leonhart v. Atkinson,* 265 Md. 219, 289 A.2d 1 (1972) (malpractice by accountant); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969) (malpractice by attorney); *Mattingly v. Hopkins,* 254 Md. 88, 253 A.2d 904 (1969) (malpractice by engineer). In *Harig v. Johns–Manville Prods. Corp.,* 284 Md. 70, 394 A.2d 299 (1978), the development of the discovery rule continued as this Court extended its application to cases involving latent disease. Finally, in *Poffenberger v. Risser,* this Court held that the discovery rule was applicable to civil actions generally, and

that a plaintiff must have knowledge, either implied or express, in order to trigger the running of the statute of limitations. *Poffenberger*, 290 Md. at 637, 431 A.2d at 681. Thus, the *Poffenberger* decision culminated over fifty years of judicial expansion of the application of the discovery principle to the general statute of limitations. *The Discovery Principle*, 41 Md.L.Rev. at 451 n. 7. Although the discovery rule can be more difficult to apply than the "date of the wrong" rule, the decision to adopt the discovery rule reflects a policy decision that plaintiffs "ought not be charged with slumbering on rights they were unable to ascertain." *Pennwalt Corp. v. Nasios*, 314 Md. 433, 441, 550 A.2d 1155, 1159 (1988) (quoting *Harig*, 284 Md. at 83, 394 A.2d at 306).

 In malpractice actions against health care providers, in lieu of the general statute of limitations, there is a special statute of repose, § 5–109 of the Maryland Code, (1974, 1989 Repl.Vol.), Courts & Judicial Proceedings Article,[2] which provides:

"Actions against health care providers.

(a) Limitations.—An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in Section 3–2A–01 of this article, shall be filed within the earlier of:

(1) Five years of the time the injury was committed; or

(2) Three years of the date when the injury was discovered."

The question presented in this case is which party bears the burden of proof when a defendant asserts that the three-year "discovery" provision of § 5–109(a)(2) should bar a claim that is filed within the five-year provision of § 5–109(a)(1). While the parties to this action do not dispute that Newell filed her claim within the five-year limitations

---

**2.** All sections referred to hereinafter are from the Courts and Judicial Proceeding Article unless otherwise specified.

period, Richards contends that Newell did not bring suit within three years from the date she discovered her injury. Moreover, he argues that Newell, as plaintiff at trial, had the burden of proving that her suit was filed in accordance with § 5–109(a)(2).

As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing the suit. *Kolker v. Biggs*, 203 Md. 137, 99 A.2d 743 (1953); *McCormick on Evidence* § 337 at 950. (E. Cleary, 3d ed. 1984). And, in the ordinary situation, defendants will have the burden to both plead and prove the statute as an affirmative defense. *See* Maryland Rule 2–323(g)(16) (requiring defendant to specially plead the limitations defense).

Richards cites *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336, *reh'g denied*, 471 U.S. 1049, 105 S.Ct. 2043, 85 L.Ed.2d 341 (1985), and *Comptroller v. World Book Childcraft Int'l, Inc.*, 67 Md.App. 424, 508 A.2d 148 (1986) for the proposition that the plaintiff should carry the burden of proof on this limitations defense. Richards argues that the following language from the court's opinion in *World Book* should be controlling:

> "[A] party relying on a matter in avoidance of the statute of limitations defense bears the burden of proving such a matter where it is shown that the cause of action accrued earlier than permitted by applicable statute.
>
> In applying this Rule to common law fraud or breach of contract actions, and in civil actions generally ... we have held that the 'burden is on [the plaintiffs] to prove that they did not discover the alleged wrong' until after the limitations period had expired."

*World Book*, 67 Md.App. at 444, 508 A.2d at 158. These cases are distinguishable from the case at bar. The issue in *World Book* was whether or not a tax assessment could be

maintained where the defendant could show that the claim was, on its face, barred by limitations. In that case, the rationale for placing the burden of proof on the plaintiff to show the statute of limitations had not run was that the plaintiff was trying to evoke an exception to the statute of limitations and should have the burden to prove the exception. *Finch* involved a plaintiff who alleged that fraudulent concealment had prevented filing an action for breach of contract within the statutory period. Probably the most typical situation where courts apply the cited principle is in cases of fraudulent concealment, such as *Finch*. In these cases, the burden is on the plaintiff to show that an expired limitations period should not bar a claim. Thus, the legal principle cited by Richards is usually applied where a plaintiff concedes that the statutory period has run but asserts that some equitable reason or exception exists which prevents the claim from being barred. This was the situation in both *Finch* and *World Book*.

The instant case is distinguishable for at least two reasons. First, Newell's claim was filed within the five-year limitations period. Second, although Richards argues that Newell is attempting to avoid the three-year limitation in the statute, Newell may just as logically argue that Richards is attempting to avoid the five-year limitation in the statute. The rule of law Richards cites from *Finch* and *World Book* might support either argument.

Depending on how the statute is read, either party could be considered to be asserting a matter in avoidance of this statute. From the plain language of the statute, it is not clear whether the General Assembly intended § 5–109 to be either (A) a five-year statute of repose with a provision that allows a defendant to cut that period short by up to two years if the defendant can show that the plaintiff did not comply with the three-year discovery provision, or (B) a three-year statute of limitations with a provision that could allow the plaintiff to extend that period up to five years if the plaintiff can show that he or she filed the claim within the three-year discovery provision.

We reviewed the legislative history of this statute in *Hill v. Fitzgerald*, 304 Md. 689, 501 A.2d 27 (1985), in response to a certified question which also required construction of the limitations statute at issue. We observed that:

"[T]he words of § 5–109 expressly place an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed, *i.e.*, the date upon which the allegedly negligent act was first coupled with harm. The purpose of the statute, readily evident from its terms, was to contain the 'long-tail' effect of the discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim that related to that treatment. The statute is a response to the so-called crisis in the field of medical malpractice claims, *see Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), and contains no room for implied exceptions.... The three- and five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not."

*Hill*, 304 Md. at 699–700, 501 A.2d at 33. In *Hill*, we concluded the legislature intended to restrict the operation of the discovery rule when it enacted this statute. The common law discovery rule would have allowed plaintiffs to bring a claim after the five-year limitations period if the claim was undiscoverable; this statute bars any claim filed five years after the injury, whether that injury is discoverable or not. In making the decision to curtail the effects of the discovery rule, *Hill* indicates that the primary objective of the legislature was to promote society's interest in maintaining malpractice insurance coverage and managing the

costs of malpractice litigation. *See also Walko Corp. v. Burger Chef,* 281 Md. 207, 378 A.2d 1100 (1977).

The statute of limitations, as a defense that does not go to the merits, is disfavored in law and is to be strictly construed. *McCormick on Evidence* § 337, at 949–50 (E. Cleary, 3d ed. 1984).

 Since it is obvious that the primary purpose of Cts. & Jud.Proc. Art., § 5–109 is to create a total bar to malpractice actions brought after five years from the date of the alleged negligent treatment, and since unquestionably the health care provider bears the burden of pleading and proving that the action is barred under the five-year provision, we believe the legislature intended a single burden of proof and that the health care provider have the burden of pleading and proving that the claimant's action is time-barred by either of the two statutory provisions. If a health care provider pleads and proves that an action was filed after five years from the alleged negligent act, the action is time-barred. If suit is brought within the five-year limitations period, the action will still be barred if the health care provider pleads and proves that the claim was not brought within three years of the date when "the injury was discovered."

## II. The Effect of the Arbitration Award

 While the Court of Special Appeals agreed that the trial judge erred in placing the burden of proof on Newell to prove that the statute of limitations had not run, that court decided that:

> "[T]he presumption of correctness of the panel opinion changed the burden of production at the trial level. At trial, appellant [Newell] had to prove, by a preponderance of the evidence that the panel opinion was wrong. Thus, the instruction given to the jury was, *de facto,* correct. The error, if any, was harmless."

*Newell v. Richards,* 83 Md.App. 371, 383, 574 A.2d 370, 376 (1990). The Court of Special Appeals reasoned that, be-

cause Ms. Newell lost before the arbitration panel, the ultimate burden of proof shifted to her. The intermediate appellate court, following a line of cases that we shall discuss, and drawing an analogy to workers' compensation cases, reasoned that there is no difference between instructing the jury that plaintiff must prove by a preponderance of the evidence that limitations have not run and instructing the jury that defendant must prove by a preponderance of the evidence that limitations have run, but they may rely on the health claims panel finding which is presumed correct. Equating the two instructions has the virtue of simplicity but the vice of inaccuracy. For reasons which we will explain, we hold that a health claims award is admissible in evidence and is presumed correct, but that the award does not have the additional effect of shifting the common law burden of proof. The jury must be correctly instructed on the burden of proof but also told that the award is presumed correct and the burden is on the party rejecting the award to show that it is not correct. An erroneous instruction on the burden of proof can constitute reversible error.

Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art., § 3–2A–06(d) describes the effect of the arbitration award on the circuit court proceeding:

"Admissibility of award; presumption of correctness.— Unless vacated by the court pursuant to subsection (c), the unmodified arbitration award is admissible as evidence in the judicial proceeding. The award shall be presumed to be correct, and the burden is on the party rejecting it to prove that it is not correct."

We first considered the effect of this provision in *Attorney General v. Johnson,* 282 Md. 274, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978). We held that the presumption is simply a rule of evidence and does not violate the right to trial by jury. *Id.* at 290–94, 385 A.2d at 67–69.

Writing for the Court in *Attorney General v. Johnson,* Judge Digges observed that:

"The effect of this provision is precisely the same as occurs under the Workmen's Compensation Act, which provides that the Commission's decision is 'prima facie correct and [that] the burden of proof shall be upon the party attacking the same.' Md.Code (1957, 1964 Repl. Vol.), Art. 101, § 56(c). We long ago said that the latter provision means that the Commission's solution of the conflict *is presumed to be correct,* and the burden of proof is upon the party attacking it to show that it was erroneous.' '[I]t simply puts the burden of proof upon the party taking the appeal, whether he be plaintiff or defendant. In other words *it establishes no new rule when the plaintiff happens to be the party appealing,* as the burden was always upon the plaintiff to prove his case." (Citations omitted) (emphasis in original).

*Id.* at 293, 385 A.2d at 68. We also added in a footnote:

"Except in the comparatively rare situation in medical malpractice cases where contributory negligence or assumption of the risk is an issue, the only change in the burden of proof at trial will thus occur when the health care provider appeals an award against him by the arbitration panel—there, essentially, the defendant must prove that the award finding him liable and assessing damages was not correct—*i.e.,* that he was not negligent. While we think it clear that the legislature may alter the burden of proof, the appellees as plaintiffs below would not in any event be able to demonstrate prejudice in this regard. *See McBriety v. Baltimore City,* 219 Md. 223, 233, 148 A.2d 408, 415 (1959)."

In Comment, *The Constitutionality of Medical Malpractice Mediation Panels: A Maryland Perspective,* 9 U.Balt. L.Rev. 75 (1979), the author compared the effect of an arbitration panel's decision under Maryland's medical malpractice statute as interpreted by *Attorney General v. Johnson* with the panel decisions in other states and noted:

"The impact of the panels' decisions vary widely. A majority of states allow the decision of the panel into evidence at subsequent court proceedings. Nearly all of

these states allow the jury to determine the weight to be attached to the finding of the panel. The sole exception is Maryland which provides that the panel decision is presumptively correct.... The Maryland plan, with its presumption, encroaches further on the constitutional rights of the parties than the plan of any other state." (Footnotes omitted).

*Id.* at 80.

In *Hahn v. Suburban Hospital Ass'n.*, 54 Md.App. 685, 461 A.2d 7 (1983), the Court of Special Appeals was called upon for the first time to determine the effect of the statute where the claimant prevailed before a Health Claims Arbitration Panel. The Court of Special Appeals based its decision on language from *Attorney General v. Johnson* and stated:

"Similar to a Workmen's Compensation appeal, sub-section (d) of § 3–2A–06 places the burden of proof upon the party rejecting the award, whether he be plaintiff or defendant. It establishes no new rule when the plaintiff happens to be the party rejecting the award, as the burden was always upon the plaintiff to prove his case by a preponderance of the evidence. But the statute shifts the burden from the plaintiff to the defendant where the defendant, in effect, loses before the Health Claims Arbitration Panel and rejects the award, requiring the defendant in such a case to satisfy a jury by a preponderance of evidence that the plaintiff is not entitled to the award made by the Panel." (Citation omitted).

*Hahn v. Suburban*, 54 Md.App. at 693, 461 A.2d at 12.

The cases of *Attorney General v. Johnson* and *Hahn v. Suburban* have opined that the arbitration award at trial is precisely analogous to a decision of the Worker's Compensation Commission. But this comparison overlooks significant differences between the two statutes. The two agencies were created to serve different purposes. The Health Care Malpractice Claims statute created the Health Claims Arbitration (HCA) Office as a unit in the Executive Department. The health claims arbitration panels are independent

from the HCA office altogether. Panel members are selected by the arbitration participants and disband as soon as they make an award. *Attorney General v. Johnson,* 282 Md. at 286, 385 A.2d at 64. The legislature's purpose in enacting the Health Care Malpractice Claims statute was to reduce the number of medical malpractice court suits by screening out frivolous claims at the arbitration level. *Id.* at 277, 385 A.2d 59; *Wyndham v. Haines,* 305 Md. 269, 274, 503 A.2d 714, 721–22 (1986). In contrast, the Workmen's Compensation Act was designed "to provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment. . . ." *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733, 734 (1980). Unlike the HCA office, the Workmen's Compensation Commission is an administrative agency and was created specifically to develop an expertise in its field. The Commission forms part of a comprehensive scheme of liability set up by the Workmen's Compensation Act, which largely abrogates the common law. *See Attorney General v. Johnson,* 282 Md. at 285, 385 A.2d at 63; *See generally,* M. Pressman, *Workmen's Compensation in Maryland,* §§ 1–2 (1977).

Workers' compensation is a statutory remedy. The legislation that establishes the burden of proof on appeal was written on a clean slate. There were no burdens and presumptions; indeed, there was no cause of action for workers' compensation prior to the workers' compensation statute. A medical malpractice action is a common law tort action. The burden of proof, as in all negligence actions, has always been on the claimant.

In workers' compensation cases, whoever takes the appeal, whether claimant or employer/insurer, stands in the position of plaintiff with the appellee as defendant. *Frazier v. Leas,* 127 Md. 572, 96 A. 764 (1916); *American Ice Co. v. Fitzhugh,* 128 Md. 382, 97 A. 999 (1916); *Jewel Tea Co. v. Weber,* 132 Md. 178, 103 A. 476 (1918); *Aetna Life Ins. Co. v. Bittinger,* 159 Md. 262, 150 A. 713 (1930). The right to open and close follows this burden of proof. *Aetna,* 159

Md. at 269, 150 A. at 716–17, *Jewel Tea Co.*, 132 Md. at 181, 103 A. at 477. In medical malpractice cases, the party making the claim against the health care provider is always the plaintiff, even if he or she is not seeking to overturn the award. Md.Rule BY3. The general practice seems to be that the plaintiff opens and closes, even if the plaintiff prevailed in arbitration.

We note also that there are far broader grounds to set aside an allegedly erroneous workers' compensation award than for vacating an allegedly erroneous health claims panel award. *Compare* Md.Code (1957, 1964 Repl.Vol.), Art. 101, § 56(a) *with* Md.Code (1974, 1989 Repl.Vol.), Cts. & Jud.Proc. Art., § 3–2A–06.

Shifting the common law burden of proof based on the health claims panel award would penalize an unsuccessful health care provider far more than an unsuccessful claimant. If either the claimant or health care provider is unsuccessful at arbitration, the award is admissible and will have evidentiary impact on the trier of fact. If the claimant is unsuccessful at arbitration, the burden of proof was on the claimant before arbitration and will be on the claimant after arbitration. Thus, as far as the burden of proof is concerned, the unsuccessful claimant is in the same position as if arbitration had not occurred. On the other hand, if the health care provider is unsuccessful at arbitration, in addition to the evidentiary effect of the adverse award, the health care provider would be further penalized by a shifting of the usual burden of proof as the result of the arbitration award.

For the reasons indicated, the workers' compensation appeal procedure is not to be utilized in medical malpractice trials. If the claimant is unsuccessful before the arbitration panel, the jury is instructed that the plaintiff has the burden of proof and that the award in favor of the health care provider is presumed correct. If the claimant is successful before the arbitration panel, the court should not instruct the jury that the burden of proof is on the defendant/health care provider; the court should instruct the

jury that the claimant has the burden of proof and couple that with an instruction that there has been a health claims panel award in favor of the claimant which is presumed correct and that the burden is on the health care provider to show that the award is not correct. Thus, the health care provider's burden of proof relates only to an item of evidence, *i.e.,* that the panel award is not, in fact, correct. An arbitration panel award in favor of a claimant is admissible and presumed correct, but it does not shift the common law burden of proof to the health care provider.

We note that *Maryland Civil Pattern Jury Instructions,* § 27:2 at 595 (2d Ed.1984) has a suggested instruction on the burden of proof for medical malpractice cases. It provides:

"A Maryland statute requires a medical malpractice claim to be submitted to arbitration before the matter may be tried by this court. Either party may appeal the arbitrator's decision to this court and if such appeal is made, the matter is tried all over.

The claim in this case was submitted to arbitration and it was decided that *(describe the arbitrator's decision)* [injured party] [ *(insert the identity of the health care provider)* ] has appealed from that decision. You are not bound by the arbitrator's decision. However, under the law that decision is presumed to be correct and the [injured party] [ *(insert the identity of the health care provider)* ] has the burden of proving by a preponderance of the evidence that the decision is wrong. In meeting this burden, the [injured party] [ *(insert the name of the health care provider)* ] may rely on the same, less or more evidence than was presented to the arbitrator."

This instruction is accurate, but on request, the court should precede it with a traditional instruction on plaintiff's burden of proof.

To the extent that language in *Attorney General v. Johnson* and its progeny are inconsistent with this opinion, that language is expressly disapproved.

■ In the instant case, Richards should have had the burden of proving that the statute of limitations had run. The trial judge's instruction that Newell must prove by a preponderance of the evidence that she did not know, or could not reasonably have known, that she had been wrongly harmed prior to July 25, 1981, was error, and was prejudicial despite the presumption of correctness of the health claims panel's determination in favor of Richards.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND REMAND THIS CASE TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.