68 A.3d 823

ST. JOSEPH MEDICAL CENTER, INC. Mark G. Midei, M.D., and Midatlantic Cardiovascular Associates, P.A.

v.

The Honorable John Grason TURNBULL II.

Misc. No. 21, Sept. Term, 2012.

Court of Appeals of Maryland.

June 20, 2013.

68 A.3d 823

ST. JOSEPH MEDICAL CENTER, INC., Mark G. Midei, M.D., and Midatlantic Cardiovascular Associates, P.A.

v.

The Honorable John Grason TURNBULL, II.

Misc. No. 21, Sept. Term, 2012.

Court of Appeals of Maryland.

June 24, 2013.

Andrew D. Levy (Greg P. Care of Brown, Goldstein & Levy, LLP of Baltimore, MD), Thomas V. Monahan, Jr., Kristin L. Rieger, Jeffrey J. Hines, Cheryl Zak Lardieri, Goodell, DeVries, Leech & Dann, LLP, Baltimore, MD, Mark A. Johnston, Edward J. Longosz, II, Sarah Shyr, Eckert, Seamans, Cherin & Mellott, LLC, Washington, DC, James R. Chason, Chason, Rosner, Leary & Marshall, LLC, Towson, MD, for St. Joseph Medical Center, Inc.

Mary Alane Downs, Steffany Bender, Morgan, Carlo, Downs & Everton, PA, Hunt Valley, MD, for Midatlantic Cardiovascular Associates, Inc.

J. Michael Sloneker, Danielle Dinsmore, Gregory L. VanGeison, Anderson, Coe & King, LLP, Baltimore, MD, Michael J. Baxter, David J. McManus, Jr., Trace Krueger, Baxter,

Baker, Sidle, Conn & Jones, P.A., Baltimore, MD, for Mark G. Midei.

William F. Brockman, Assistant Attorney General, Douglas F. Gansler, Attorney General of Maryland, Steven M. Sullivan and H. Scott Curtis, Assistant Attorneys General, of Baltimore, MD, for appellee.

William H. Murphy, Jr. (Murphy, Falcon, Murphy, Ravenall & Koch of Baltimore, MD; Robert J. Weltchek, Kristopher A. Mallahan, Nolan J. Weltchek and Nathan W. Hopkins of Weltchek, Mallahan & Weltchek LLC of Lutherville, MD for Amicus Curiae, Glenn L. Weinberg) in support of appellee.

Howard A. Janet (Giles H. Manley, Joyce E. Jones and Jessica Meeder of Janet, Jenner and Suggs, LLC of Baltimore, MD for Amici Curiae Carl and Dorothy Sullivan) in support of appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

GREENE, J.

On March 15, 2013, we vacated two Orders issued by the Honorable John Grason Turnbull, II, the Administrative Judge of the Circuit Court for Baltimore County, which related to the bifurcation or severance of claims and the reassignment of two cases pending in the Circuit Court for Baltimore County. *St. Joseph Medical Center v. Turnbull,* 431 Md. 369, 65 A.3d 678 (2013). We remanded the cases, *Weinberg v. Midei, et al.,* case number 03 C 10 12603, and *Sullivan, et al. v. St. Joseph Medical Center, Inc., et al.,* case number 03 C 10 12624, to the Circuit Court for further proceedings. We vacated the Order to reassign the cases because the Administrative Judge's decision to reassign the cases appears to flow directly from his decision to review and vacate the trial judge's Orders bifurcating the *Sullivan* and *Weinberg* trials. In addition, we reinstated the Orders of Judge Nancy M. Purpura to bifurcate the *Weinberg* and *Sullivan* trials. The effect of our Orders is to restore these cases to the status quo just prior to the actions taken by Judge Turnbull. In addition, we vacated a previous Order of

this Court which stayed proceedings, pending in the Circuit Court, in the *Metzdorf* case.[1] Now we explain the reasons for our Orders in this case.

Petitioners, St. Joseph Medical Center, Inc., Mark G. Midei, M.D. and Midatlantic Cardiovascular Associates, P.A., filed in this Court a petition for writ of mandamus or writ of prohibition (collectively a "prerogative writ") to reverse the November 2 and 28, 2012 Orders of Judge Turnbull, Administrative Judge of the Circuit Court for Baltimore County. Respondent, Judge Turnbull, filed a response asking this Court to deny the petition. Carl and Dorothy Sullivan, Ronald Metzdorf and Glenn Weinberg, plaintiffs in the underlying cases, through counsels, also filed briefs as amici curiae asserting that we should not grant the petition. The Order of Judge Turnbull dated November 2, 2012 provided:

The above cases were specially assigned [to] Judge Nancy M. Purpura for trial by the Family Law Administrator, Richard Abbott, with the approval of the Administrative Judge.

During the months of June, July and September, the Defendants filed Motions to Bifurcate Count 1 and requested that this count be tried separately from the remaining counts.

The question of bifurcation directly effects the case flow management of this Court, and as such the Motions to Bifurcate should have been forwarded by the Clerk's Office to the Administrative Judge for a ruling. It is apparent that the Clerk's Office, noting that the cases were specially assigned, forwarded these requests directly to the Trial

---

1. On November 2, 2012, Judge Turnbull also reassigned the case *Metzdorf, et al. v. St. Joseph Medical Center, Inc., et al.,* case number 03 C 11 3213, which originally had been assigned to Judge Purpura, and effectively directed that all bifurcation motions in the Circuit Court for Baltimore County be sent to him for ruling as Administrative Judge. On February 15, 2013, we granted a temporary stay of Circuit Court proceedings in the *Metzdorf* case pending further proceedings in this Court. On March 15, 2013, in conjunction with granting the petition for writ of mandamus or prohibition, we vacated our stay of the *Metzdorf* proceedings.

Judge and not the Administrative Judge as is required. When dealing with issues involving case management, requests for a stay of a case, postponements, changes in scheduling orders and Motions to Bifurcate that directly effect the case flow shall be ruled upon by the Administrative Judge.

The Administrative Judge has reviewed the Motions to Bifurcate and the Opinions of Judge Purpura, and while this Court has the utmost respect for Judge Purpura, the Administrative Judge deems that a bifurcation is not necessary and will cause additional trials to be held which is not in the interest of judicial economy, and will adversely effect the case flow management.

For the aforegoing reasons, the Court strikes the Orders of October 18, 2012 in Weinberg vs. Midei, et al, case number 03 C 10 12603[,] and Sullivan, et al vs. St. Joseph Medical Center, Inc., et al, case number, 03 C 10 12624, and further Orders that the Defendants' Requests for Bifurcation be, and the same are hereby denied.

Judge Turnbull also indicated in his Order that, "at the request of Judge Purpura ... these case[s] shall be reassigned to Judge Susan Souder for Trial."[2]

Petitioners contend that by striking Judge Purpura's Orders in the *Weinberg* and *Sullivan* cases that the "trial[s] be bifurcated so that count 1 (medical negligence) is tried first and the remaining counts tried thereafter in a separate proceeding[,]" Judge Turnbull exceeded his administrative authority and further divested his coordinate trial judges and this State's appellate courts of their jurisdiction.

This case began when Glenn Weinberg, individually, and Carl and Dorothy Sullivan, his wife, in separate lawsuits, sued Dr. Midei and St. Joseph Medical Center[3] alleging that the

---

**2.** Further, by Order dated November 28, 2012, Judge Turnbull denied a request to reconsider his Order of November 2.

**3.** As of their Second Amended Complaint, the Sullivans also named Midatlantic Cardiovascular Associates, P.A. and Catholic Health Initiatives, Inc. as defendants.

cardiac stents that Glenn Weinberg and Carl Sullivan received during cardiac catheterization procedures performed by Dr. Midei at St. Joseph Medical Center were medically unnecessary. Weinberg and the Sullivans each alleged causes of action for, among other things, medical negligence, lack of informed consent and fraud based on the premise that their respective stents were medically unnecessary. Prior to the trial date, Dr. Midei and St. Joseph Medical Center filed motions to bifurcate the trials.[4] After a full hearing on the motions in open court, Judge Purpura, on September 28, 2012, in the *Weinberg* case, granted Dr. Midei and St. Joseph Medical Center's motions to bifurcate and announced orally from the bench that without bifurcation of "the medical negligence count" from the other counts, "a single unified trial would be incredibly unwieldy," would adversely affect judicial economy, and would result in extreme prejudice to Dr. Midei. In a written Order dated October 18, 2012, Judge Purpura directed that the *Weinberg* trial be bifurcated as indicated on September 28. Thereafter, as to similar motions to bifurcate the *Sullivan* trial, Judge Purpura filed on October 19, 2012 a written opinion dated October 18. She stated in her opinion that the "trial will proceed in two phases: (1) Claim I–Medical Negligence, (2) Claims II–XI." [5]

In the *Sullivan* case, Judge Purpura addressed the potential for unfair prejudice. She pointed out:

The [Circuit] Court finds that the bifurcation of the sole medical negligence claim (Count I) from the other counts is appropriate to avoid unfair prejudice to the Defendants.

---

**4.** Midatlantic Cardiovascular Associates also filed a motion to bifurcate the *Sullivan* trial, adopting the arguments of Dr. Midei.

**5.** The remaining Counts II–XI are: Count II: Fraud by Intentional Misrepresentation; Count III: Fraud by Concealment; Count IV: Negligent and Intentional Hiring, Privileging, and Appointing Director and Continuing Retention; Count V: Negligent and Intentional Failure to Supervise; Count VI: Lack of Informed Consent; Count VII: Negligent Entrustment; Count VIII: Fraud in the Inducement; Count IX: Breach of Contract; Count X: Civil Conspiracy; and Count XI: Loss of Consortium.

Evidence of a conspiracy and intentional harm is unrelated to the medical negligence claim, despite Plaintiffs' argument to the contrary, and would be highly prejudicial to the Defendants. As in *Myers [v. Celotex Corp.,* 88 Md.App. 442, 594 A.2d 1248 (1991) ], a jury will first decide the underlying issue in the case and will not consider unrelated evidence that could prove unfairly prejudicial. This course will avoid requiring a jury to ignore evidence of other alleged intentional harms while considering whether Defendants acted negligently toward Mr. Sullivan on July 21, 2005.

Judge Purpura also discussed the convenience to the trial court, jury and parties stating in the *Sullivan* case:

Furthermore, a bifurcated trial will also serve the convenience of the [c]ourt, the parties and the jury. A unified trial would prove unwieldy as it would be continuously interrupted by the parties arguing, out of the presence of the jury, over the admissibility of evidence repeatedly throughout the trial. . . . This approach will minimize interruptions and negate the need to adjudicate the other claims if the jury finds Dr. Midei was not negligent while caring for Mr. Sullivan.

Judge Purpura further explained:

This procedure will not limit in any way the relevant evidence that plaintiffs may introduce to prove the fraud counts. It does, however, limit the very great risk of unfair prejudice that would result from a unified trial. Further, the [c]ourt is persuaded that judicial economy will also be served by a bifurcated trial. A decision on negligence may foreclose the necessity of a second trial either because there is no finding of negligence or because after a finding of negligence the parties are able to reach a settlement as to the remaining claims. Trial in a unified case would take 4 to 6 weeks as opposed to 1 week for a medical negligence case.

It is undisputed that Judge Purpura acted pursuant to Rule 2–503(b) in granting the motions to bifurcate the trial in the

*Weinberg* and *Sullivan* cases. Section (b) of Rule 2–503 provides:

(b) **Separate trials.** In furtherance of convenience or to avoid prejudice, the court, on motion or on its own initiative, may order a separate trial of any claim, counterclaim, cross-claim, or third-party claim, or of any separate issue, or of any number of claims, counterclaims, cross-claims, third-party claims, or issues.

■ Pursuant to Rule 2–503(b), it is within a trial court's discretion to enter a severance order and direct that different phases of a single action proceed as "separate actions" for purposes of convenience or to avoid prejudice. *See Blades v. Woods,* 338 Md. 475, 476–77, 479, 659 A.2d 872, 872–73, 874 (1995) (The trial judge properly entered an order directing that two claims in a single case, a request for judicial review of a police department's decision to fire an employee and a claim for damages for an alleged violation of 42 U.S.C. § 1983, "proceed as separate actions."). In *Newell v. Richards,* 83 Md.App. 371, 574 A.2d 370 (1990), *rev'd on other grounds,* 323 Md. 717, 594 A.2d 1152 (1991), involving a medical malpractice case filed in the Circuit Court for Baltimore County, the defendants, Dr. George J. Richards, Jr., Greater Baltimore Medical Center (GBMC) and Richards, Hirschfeld & Associates, P.A., each filed a motion entitled "Motion for Separate Trials." 83 Md.App. at 374, 574 A.2d at 372. The trial judge granted the motions for separate trials, the effect of which was to separate the issues in the case of whether plaintiff's claim was barred by the statute of limitations and the merits of her medical malpractice claim. 83 Md.App. at 374, 386–87, 574 A.2d at 372, 378–79. The Court of Special Appeals held that to avoid prejudice and in the interest of "judicial economy" and "convenience" it was proper to bifurcate the issue of the merits from an initial determination of whether the statute of limitations barred the plaintiff's claim. 83 Md.App. at 387, 574 A.2d at 379. Judge Rosalyn B. Bell summarized the law and its application to the *Newell* case:

The decision to bifurcate a trial is within the discretion of a trial judge. Such a decision is subject to the abuse of

discretion standard of review. Primary considerations for application of the rule are convenience and avoiding prejudice.

The trial court, pursuant to Rule 2–503, separated the case into two proceedings: (1) whether [the plaintiff] complied with the statute of limitations, and if so, (2) whether medical negligence existed. There is no question that the bifurcation of the trial served the purpose of Rule 2–503 in that, if the answer to the first question was in the negative, there need be no trial on the second issue. In addition to convenience, judicial economy would also be served. Moreover, we agree with [defendants] that the jury would have been required to ignore all the evidence concerning [plaintiff's] physical problems, which could well have prejudiced [defendants].

*Newell,* 83 Md.App. at 387, 574 A.2d at 378–79 (citations omitted).

Similarly, in *Myers v. Celotex Corp.,* 88 Md.App. 442, 594 A.2d 1248 (1991), the Court of Special Appeals affirmed that bifurcation of the issues at trial, where a finding in favor of the defendants on the first issue eliminated the need to present evidence regarding the remaining issues, proved to be a convenience to the court, the jury and the parties. *Myers,* 88 Md.App. at 448–50, 594 A.2d at 1251–52 (holding that the trial judge's bifurcation of the trial into stages was proper because it served the two components of Rule 2–503(b): convenience and to avoid prejudice); *see also Corinaldi v. Columbia Courtyard, Inc.,* 162 Md.App. 207, 228–29, 873 A.2d 483, 495 (2005) (noting that bifurcation of the liability and penalty phases of a trial between separate juries was within the court's discretion).

 In the present case, we hold that the trial judge, Judge Purpura, acted within the scope of her authority in ruling on the bifurcation motions,[6] and the Administrative Judge, Judge

---

6. We need not and do not reach the merits of Judge Purpura's decision to bifurcate the trials. Our focus here is whether Judge Purpura's

Turnbull, exceeded the scope of his authority. Even if we were to assume, *arguendo*, that the trial judge abused her discretion in granting the motions to bifurcate, that decision would have been subject to review by the appellate courts and not the Administrative Judge. *See McGarr v. Boy Scouts of America*, 74 Md.App. 127, 142, 536 A.2d 728, 735 (1988); *see e.g.*, Md. Const. art. 4, §§ 14, 14A; Md.Code (1973, 2006 Repl. Vol), §§ 12–307, 12–308 of the Courts and Judicial Proceedings Article; Maryland Rules, Title 8. As Petitioners point out in their petition for a prerogative writ, "[t]here are no constitutional or statutory provisions creating appellate jurisdiction in the Administrative Judge to review the substantive determinations of other circuit court judges."

■ In *In re Petition for Writ of Prohibition*, 312 Md. 280, 539 A.2d 664 (1988), this Court said, "we may issue a prerogative writ if we believe the interests of justice require us to do so in order to restrain a lower court from acting in excess of its jurisdiction, otherwise grossly exceeding its authority, or failing to act when it ought to act." 312 Md. at 307, 539 A.2d at 677. In other words, "[a]n extraordinary writ is appropriate only when judicial power has been usurped or if there is a clear abuse of discretion." 312 Md. at 327, 539 A.2d at 687 (citation omitted). We determined that there was no basis to issue a writ in *In re Petition* because the State had the burden to persuade us to grant the writ but failed to do so where the trial judge "granted a motion for a new trial in a criminal case, an action he had the power to take[,]" he weighed the evidence, and he acted to prevent "injustices[.]" 312 Md. at 329, 539 A.2d at 688.

Unlike the case of *In re Petition*, in *Philip Morris v. Angeletti*, 358 Md. 689, 752 A.2d 200 (2000), we found on the facts of that case a basis to issue a prerogative writ. In *Angeletti*, a group of "tobacco manufacturers and related entities" requested that we issue a writ directing the Circuit

---

ruling on the issue of bifurcation was within the scope of her authority as the trial judge assigned to the cases.

Court for Baltimore City to vacate its certification of two classes as plaintiffs in a large three-phased lawsuit. 358 Md. at 699, 702, 752 A.2d at 205, 207. Petitioners in that case maintained that the trial judge "grossly abused" his discretion in violation of both Md. Rule 2–231 and their constitutional rights, and also asserted that irreparable harm would result to them and the judicial system if they were "required to await end-of-the-case appeal." 358 Md. at 704, 752 A.2d at 208. The tobacco companies, therefore, urged this Court "to compel the Circuit Court to decertify the classes as an exercise in aid of our appellate jurisdiction or, in the alternative, as an execution of this Court's superintendency, whether inherent or bestowed, over the lower courts of this State." *Id.*

We concluded that "Petitioners have demonstrated the lack of other available, adequate relief as well as the existence of a paramount public and judicial interest that, together, override the preference for the final judgment rule and justify the issuance of mandamus, in order to protect the integrity of the judicial system in this State." 358 Md. at 714, 752 A.2d at 213. In addition, we held:

[G]iven the irreparable harm that might otherwise be suffered by the legal system and by Petitioners, we may issue a writ of mandamus in aid of our appellate jurisdiction in the present matter. It is appropriately within this Court's prerogative to review the order of the Circuit Court granting class certification in this case ... because of the immense amount of time and expense that both the parties and the judicial system of this State will incur should the litigation proceed as a class action, as well as the astronomical number of persons in Maryland whose lives will be affected by our decision either way.

358 Md. at 722, 752 A.2d at 218.

In reaching these conclusions, we noted that "[t]he litigation plan approved by the Circuit Court in th[at] case necessarily involves the commitment of such an extraordinary amount of the judicial and other resources of the busiest trial court in this State that any subsequent appellate review of the lower

court's Class Certification Order is rendered inadequate and ineffective." 358 Md. at 714, 752 A.2d at 213. Given the complex nature of the large lawsuit at issue in *Angeletti,* an opportunity to challenge the class certification on appeal would not occur until a significant amount of time and expense would be spent. 358 Md. at 714–16, 752 A.2d at 213–15. We determined in that case that "[r]elief by mandamus is appropriate where it will prevent a needless, expensive trial and an ultimate reversal." 358 Md. at 717, 752 A.2d at 215 (citations and quotation omitted). Therefore, we concluded that "[g]iven the judicial and other resources that would be irrevocably wasted should the Circuit Court's Class Certification Order not be overturned until after a Phase II or Phase III judgment, we will not permit this case to proceed that far if we are convinced presently that reversal of the Class Certification Order is mandated." 358 Md. at 717, 752 A.2d at 215.

Further focusing on the public interest and the extraordinary nature of the *Angeletti* case, we pointed out that "[b]oth the public interest and our responsibility in exercising the supreme judicial authority of this State thus compel the exercise of this Court's discretion in this extraordinary case." 358 Md. at 718, 752 A.2d at 215. We determined that the magnitude of the case "may significantly impact or divert the public resources earmarked for the judiciary for the next several years[.]" 358 Md. at 718, 752 A.2d at 216. Additionally, we stated that, although in *Keene Corp. v. Levin,* 330 Md. 287, 294, 623 A.2d 662, 666 (1993), we concluded that the costs and delay of waiting for an appeal did not warrant the issuance of an extraordinary writ, the "extraordinary circumstances" of the *Angeletti* case were such that if expenses were incurred because of the Circuit Court's erred class certification "they would be losses as monumental in their unfairness as in their sheer amount." 358 Md. at 720, 752 A.2d at 217 (citation omitted). Finally, we noted that:

"[S]ome courts have expressed concern that granting class certification significantly increases the pressure on a risk-adverse defendant to settle pending class claims rather than face the threat of an exceptional award of damages. Should

similar undue pressure be thrust upon Petitioners here, owing to a determination by the Circuit Court that is erroneous or abusive of its discretion, the injustice would be equally attributable to this Court for hesitating to exercise a discretion, however extraordinary in nature, with which we are not so much empowered as we are charged."

358 Md. at 721, 752 A.2d at 217 (citations omitted).

■ In the present case, Respondent challenges the propriety of our issuing a writ because, in his view, "this matter does not involve the type or severity of circumstances that this Court has deemed necessary to justify the issuance of a writ of mandamus, which ... [we] hardly ever" grant. First, according to Respondent, mandamus relief is not available here because Petitioners essentially seek immediate review of an admittedly discretionary interlocutory order rather than await appellate review. Second, Respondent contends that "the petition presumes ... that a litigant has a right to insist on assignment of a case or motion to a certain judge and to complain if another judge revisits the matter." Third, Respondent maintains that the Circuit Court had fundamental jurisdiction to enter the November 2, 2012 Order and did not usurp the appellate court's jurisdiction. Lastly, Respondent asserts that the authority of an Administrative Judge is broad, that Judge Turnbull was "acting to fulfill his responsibilities as ... Administrative Judge" because "[t]he question of bifurcation directly [a]ffects the case flow management of [the Circuit Court for Baltimore County]," and that as the Circuit and County Administrative Judge, he had "full authority to assign judges for trials or hearings" which "included the ability to assign *Weinberg* and *Sullivan* temporarily to himself for purposes of reconsidering bifurcation, before reassigning the cases to Judge Souder."

As to Respondent's first two assertions, that Petitioners seek immediate review of a discretionary interlocutory order and that Petitioners "insist on assignment of a case or motion to a certain judge and [ ] complain if another judge revisits the matter[,]" we disagree with Respondent's characterization of

the relief sought. A prerogative writ is sought in the current case because Judge Turnbull has, without the authority to do so, acted as an appellate court reviewing Judge Purpura's decision to bifurcate the cases and has unilaterally taken the authority from all other trial judges sitting on the Baltimore County Circuit Court to rule on bifurcation motions on the theory that such motions directly "effect the case flow." [7]

Article IV, Section 1 of the Maryland Constitution provides that "[t]he Judicial power of this State is vested in a Court of Appeals, such intermediate courts of appeal as the General Assembly may create by law, Circuit Courts, Orphans' Courts, and a District Court." Md. Const. art. 4, § 1. As we have stated, "[i]n this State, all judicial authority is only such as is provided for by Article 4 of the Maryland Constitution, and it has been decided that only judicial functions can be exercised which find their authority in that Article. . . ." *Dal Maso v. Bd. of Cnty. Comm'rs of Prince George's Cnty.*, 182 Md. 200, 205, 34 A.2d 464, 466 (1943) (citations omitted). Article IV, Section 20(a) of the Maryland Constitution further expresses that "[t]he Circuit Courts shall have and exercise, in the respective counties, and Baltimore City, all the power, authority and jurisdiction, original and appellate, which the Circuit

---

**7.** Specifically, Petitioners maintain that "[i]mmediate review of Judge Turnbull's November Order is necessary to protect the integrity and impartiality of the judicial system." In arguing that, the Petitioners note that review after the conclusion of trial "will be inadequate, not only because Judge Purpura will have been improperly stripped of her jurisdiction to independently and impartially exercise her discretion in cases assigned to her, but all other judges will be stripped of their ability to exercise their constitutional power to adjudicate cases before them." This contention advances a usurpation argument. Petitioners do not assert that Judge Turnbull was incorrect in ruling that bifurcation should not be granted, rather Petitioners argue that he did not have the authority to make that decision. And, when Petitioners contended that they "and all pending and future litigants—will be deprived of their Due Process rights to have an impartial judge vested with constitutional authority make judicial rulings in their cases[,]" their assertion is not that the trial judge who decided the bifurcation issue is not the trial judge Petitioners would choose to decide the matter. Rather, Petitioners apparently take issue with the fact that the trial judge assigned to handle their cases decided to bifurcate the trials and those decisions were vacated illegally.

Courts of the counties exercised on the effective date of these amendments, and the greater or lesser jurisdiction hereafter prescribed by law." Md. Const. art. 4, § 20(a). In other words, "[t]he circuit courts of this State ... are courts of original general jurisdiction and, therefore, they may hear and decide all cases at law and in equity other than those which fall within the class of controversies reserved by a particular law for the exclusive jurisdiction of some other forum." *First Federated Commodity Trust Corp. v. Comm'r of Sec. for Md.,* 272 Md. 329, 335, 322 A.2d 539, 543 (1974) (citations omitted). This is further reflected in Section 1–501 of the Courts and Judicial Proceedings Article, which indicates, "The circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State. Each has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal." Md.Code (1973, 2006 Repl.Vol.), § 1–501 of the Courts and Judicial Proceedings Article.

The Maryland Constitution, Article IV, Section 21(b), requires that "[t]here shall be at least four circuit court judges resident in each circuit, and at least one circuit court judge shall be resident in each county." Md. Const. art. 4, § 21(b). As the constitutionally required representative of the circuit court, a judge, when acting in his or her judicial capacity, generally has the authority vested by the Constitution in the circuit courts, or in other words, acts as the "circuit court." *Cf. State v. Wiegmann,* 350 Md. 585, 593–95, 714 A.2d 841, 845–46 (1998) (citations and quotations omitted) (expressing that unlike a judge, a master is not a "judicial officer" and therefore: (1) a master does not have "any judicial powers[;]" (2) "a judge may never delegate away a part of the decision making function to a master—a non-judicial officer[;]" and (3) "a master is not the trial judge ... [and] does not replace her or him" and therefore, may not issue a warrant, an action requiring "judicial power[ ]").

Pursuant to a judge's constitutionally-based authority, when acting in his or her judicial capacity as, for example, a trial judge presiding over a trial, this Court has recognized the discretion and responsibility our judicial system places in him or her. In *City of Bowie v. MIE Props., Inc.,* 398 Md. 657, 922 A.2d 509 (2007), we pointed out:

As a general proposition, trial judges have the widest discretion in the conduct of trials, and the exercise of that discretion should not be disturbed on appeal in the absence of clear abuse. Thus, a trial judge maintains considerable latitude in controlling the conduct of a trial subject only to an abuse of discretion standard.

398 Md. at 684, 922 A.2d at 525 (quotation omitted). In *State v. Hawkins,* 326 Md. 270, 604 A.2d 489 (1992), we further took note of "[t]he principle that the overall direction of the trial is within the sound discretion of the trial judge. . . ." 326 Md. at 277, 604 A.2d at 493 (quotation omitted). In another context, Judge Harry Cole, writing for this Court, "reaffirm[ed]" that "[w]e place[ ] the responsibility on the trial judge to weigh and balance the rights, interests, and reasons of the parties . . ." and "the trial judge, on the scene, will have a perception and understanding of the legal environment in which the case is temporarily mired[,]" and "[t]herefore, [the trial judge] [i]s vested with the discretion to be exercised consistent with the spirit of the law while subserving the ends of justice and fairness to the parties." *Langrall, Muir & Noppinger v. Gladding,* 282 Md. 397, 400–01, 384 A.2d 737, 739 (1978). In short, once assigned to preside over a trial, it is generally within the province of a trial judge to make discretionary decisions that affect the rights and interests of the litigants. Accordingly, as we pointed out previously, Judge Purpura in the exercise of her judicial authority as a trial judge, pursuant to Rule 2–503(b), bifurcated the trials.

Article IV, Section 18 of the Maryland Constitution: (1) "provides, *inter alia,* that the Chief Judge of [this Court] is the administrative head of the State's Judicial system[;]" (2) "requires that the Court of Appeals 'shall adopt rules and regulations concerning the practice and procedure in and the

administration of . . . the other courts of this State[;]' " and (3) "states that the authority of all courts of the State over practice, procedure, and administration 'shall be subject to the rules and regulations adopted by the Court of Appeals. . . .' " *Strickland v. State,* 407 Md. 344, 356, 965 A.2d 887, 893–94 (2009). Although there is no provision in the Maryland Constitution specifically establishing County or Circuit Administrative Judges, Maryland Rule 16–101, adopted by this Court "pursuant to the mandate contained in Article IV § 18, of the [Maryland] Constitution[,]" *Strickland,* 407 Md. at 356, 965 A.2d at 894, provides for the appointment of Circuit and County Administrative Judges who serve at the pleasure of the Chief Judge of this Court. *See* Md. Rule 16–101(c); Md. Rule 16–101(d).

As both parties acknowledge, Judge Turnbull serves as both the Circuit Administrative Judge for the Third Judicial Circuit and as the County Administrative Judge for Baltimore County. Provisions within Title 16 of the Maryland Rules delineate the authority of Administrative Judges, namely to oversee the "internal management" and administration of the courts. *See Strickland,* 407 Md. at 361, 965 A.2d at 896. Maryland Rules 16–101(c) and 16–101(d) provide that a Circuit and County Administrative Judge, respectively, in his or her role as such, is "responsible for the administration" of "justice" and "the courts" in his or her circuit or county. Rule 16–101(d) further enumerates the duties of the Administrative Judge,[8] including "supervision of all judges, officers, and employees of the court, including the authority to assign judges within the court pursuant to Rule 16–103 (Assignment of Judges)[,]" and "supervision and expeditious disposition of cases filed in the court and the control of the trial calendar and other calendars, including the authority to assign cases for trial and hearing pursuant to Rule 16–102 (Chambers Judge) and Rule 16–202 (Assignment of Actions for Trial)[.]" In summary, Title 16 of

---

8. Although Rule 16–101(d) provides for the duties of a County Administrative Judge, Rule 16–101(c)(2) indicates that a Circuit Administrative Judge "may perform any of the duties of a County Administrative Judge."

the Maryland Rules grants an Administrative Judge authority to make administrative decisions with regard to the "internal management" of the circuit court. *Strickland*, 407 Md. at 361, 965 A.2d at 896.

■ A judge of the circuit court, whether he or she is a trial judge, a chambers judge, or an Administrative Judge, carries out various responsibilities, some of which are administrative and some of which are judicial. Whether a judge acts in a judicial or administrative capacity, his or her actions must be within the scope of his or her authority. A judge, when acting in a judicial capacity as a trial judge with "his [or her] finger on the pulse of the trial[,]" *State v. Hawkins*, 326 Md. 270, 278, 604 A.2d 489, 493 (1992), will usually have discretion to preside over a trial and make judicial decisions that affect the rights of the parties in that trial. When acting as an Administrative Judge, largely, a judge has the power to make administrative decisions that focus on the administration of the court, but would not, in general, be empowered to unilaterally divest other judges of the court of their inherent authority to rule on issues affecting the rights and interests of litigants in a specific case. *Compare Black's Law Dictionary* 28 (9th ed.2009) (defining an "administrative act" as "[a]n act made in a management capacity; esp., an act made outside the actor's usual field (as when a judge supervises court personnel)[ ]") *with Black's Law Dictionary* 28 & 924 (9th ed.2009) (defining "judicial act" as "[a]n act involving the exercise of judicial power" and "judicial power" as "[t]he authority vested in courts and judges to hear and decide cases and to make binding judgments on them; the power to construe and apply the law when controversies arise over what has been done or not done under it[,]" and "[a] power conferred on a public officer involving the exercise of judgment and discretion in deciding questions of right in specific cases affecting personal and proprietary interests[ ]"). The decision to bifurcate is ordinarily one of the judicial decisions within the discretion of a trial judge, and nothing in Title 16 of the Maryland Rules or any statute or constitutional provision grants Judge Turnbull

the authority, in his capacity as an Administrative Judge, to usurp that discretion.

Although it has the potential to affect the internal management of the court, bifurcation of a trial is not a decision primarily affecting the administration of the circuit court. Rather, the decision whether to bifurcate a case is a judicial decision requiring consideration of the rights of the litigants in the case, and it is generally within the discretion of a trial judge presiding over a trial in his or her judicial capacity. *See Myers*, 88 Md.App. at 448–49, 594 A.2d at 1252; *Newell*, 83 Md.App. at 387, 574 A.2d at 378. When considering whether to bifurcate a case pursuant to Rule 2–503(b), a trial court considers both convenience *and* prejudice as either factor can provide a basis to bifurcate the issues in a trial. *See Myers*, 88 Md.App. at 449–50, 594 A.2d at 1252; *Newell*, 83 Md.App. at 387, 574 A.2d at 378. Judge Purpura's decision to grant bifurcation in the *Sullivan* and *Weinberg* cases was, in large part, related to the potential for prejudice faced by Petitioners. A trial judge ordinarily will be asked during trial to make determinations addressing potential prejudice to a litigant. *See* Md. Rule 5–403 (giving trial judges the authority to exclude evidence that "[a]lthough relevant . . . may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ."); *see also Hawkins*, 326 Md. at 278, 604 A.2d at 493 ("The fundamental rationale in leaving the matter of prejudice *vel non* to the sound discretion of the trial judge is that the judge is in the best position to evaluate it.").

Merely because bifurcation could affect the internal management of the circuit court does not authorize an Administrative Judge to unilaterally strip a trial judge of discretion over the bifurcation decision. Numerous judicial decisions have the potential to affect the internal management of the circuit courts, but discretion over those judicial decisions usually remains with trial judges presiding over the cases, not with Administrative Judges managing the courts. For example, the scope and extent of voir dire allowed before a witness is permitted to testify as an expert witness could affect the

administration of a circuit court. Generally, trial judges, and not Administrative Judges, however, decide the extent of voir dire necessary for a witness to testify as an expert. *See Univ. of Md. Med. Sys. Corp. v. Waldt,* 411 Md. 207, 232–33, 983 A.2d 112, 127 (2009) (noting that trial judges have the "responsibility ... to determine whether an individual qualifies as an expert witness"); Md. Rule 5–702.[9] Similarly, the decision to declare a mistrial, or order a new trial, could affect the administration of the courts. It is not an administrative matter to be ruled on by the Administrative Judge as part of his or her responsibility for the internal management of the court, however. Rather, generally, the trial judge overseeing a case will rule on whether to grant a mistrial or a new trial. *See Cornish v. State,* 272 Md. 312, 314–15, 322 A.2d 880, 882–83 (1974) (The trial judge presiding over the case granted a mistrial.); *Owens–Illinois v. Gianotti,* 148 Md.App. 457, 476, 813 A.2d 280, 291 (2002) (citation omitted) ("A trial judge is given broad discretion in determining whether a motion for mistrial should be granted."). And, although the length and scope of a preceding to select a jury has the potential to affect the flow of cases in a circuit court, a trial judge, ordinarily, has discretion to regulate the selection of a jury. *See Davis v. State,* 333 Md. 27, 34, 633 A.2d 867, 870 (1993) ("The common law of this State vests trial judges with discretion to regulate *voir dire* [of jurors].").

In short, as Administrative Judge, Judge Turnbull had the authority to make administrative decisions concerning the day-to-day management of the Circuit Court. As Administrative Judge, however, he did not have the authority to either review and vacate Judge Purpura's decisions to bifurcate the *Sullivan* and *Weinberg* trials or unilaterally take the discretion over the bifurcation of cases that allegedly affect "case flow" away from

---

9. As Respondent argues, Maryland Rule 2–503(b) indicates that the "court" may grant bifurcation. Similarly, Maryland Rule 5–702 indicates that the "court" will determine whether to accept a witness as an expert. We do not interpret either of these rules to necessarily permit an Administrative Judge, acting in his or her capacity as an administrator, to order that he or she has absolute authority over bifurcation or the voir dire of an expert witness.

the trial judges of the Baltimore County Circuit Court. Authority over the "internal management" of the court is not the equivalent of authority over any judicial decision that affects case flow. *Cf. Brutley v. Commonwealth*, 967 S.W.2d 20, 23 (Ky.1998) ("The Chief Judge, being this Court's delegate, has considerable discretion in administrative decisions, however no other District Judge has the authority to 'bind the hands' of another District Judge by issuing any order which limits the discretionary ruling of another judge."); *Sims v. Ryan*, 125 N.M. 357, 961 P.2d 782, 784 (1998) (Where a local ordinance gave the "Presiding Judge" authority to establish judicial polices, the New Mexico Supreme Court held that "[a]lthough judicial policymaking authority allows a Presiding Judge to set schedules, make rules of court, assign duties, and generally administratively run the court, the Presiding Judge may not strip a duly elected judge of the inherent powers associated with the position, including the power to sentence."); *State ex rel. Skinner v. Dostert*, 166 W.Va. 743, 278 S.E.2d 624, 634–35 (1981) (Concluding that the circuit court's "general supervisory control" over a magistrate court allowed the circuit court to "exercise the administrative powers necessary to 'secure the convenient and expeditious transaction of ... business[,]'" but did not "confer upon the circuit court the power to interfere with the judicial function of the magistrate or to control judicial discretion in any particular case before the magistrate.").[10]

Pursuant to Rules 16–101 and 16–103, Judge Turnbull had the authority both to assign the *Sullivan* and *Weinberg* cases

10. Considering our disposition of this case, where the Administrative Judge unilaterally gave himself the authority to rule on all bifurcation motions, we need not reach whether such authority could have been granted by the Circuit Court adopting a differentiated case management plan (DCM) pursuant to Maryland Rule 16–202(b). In the present case, the Baltimore County Circuit Court DCM plan presented to this Court by one of the Amici was a 2006 DCM plan which, as counsel for Respondent acknowledged in oral argument before this Court, makes no explicit or express reference to bifurcation. In the record, there is also a 2011 memorandum sent from Judge Turnbull to "All Judges" but this does not appear to be a case management plan approved by the Chief Judge of this Court as provided for in Md. Rule 16–202(b).

to a trial judge and to reassign the cases in the ordinary course of the administrative management of the court. *See Strickland,* 407 Md. at 358, 965 A.2d at 895. And, if the case had been reassigned, the judge hearing the case in place of Judge Purpura would likely not have been bound by her rulings, including the ruling on whether to bifurcate the cases. In other words, the issue of bifurcation could be reconsidered. *See State v. Frazier,* 298 Md. 422, 449, 470 A.2d 1269, 1283 (1984) (citations omitted) ("As a general principle, one judge of a trial court ruling on a matter is not bound by the prior ruling in the same case by another judge of the court; the second judge, in his discretion, may ordinarily consider the matter de novo."); *see also Scott v. State,* 379 Md. 170, 183–85, 840 A.2d 715, 722–23 (2004); *Gertz v. Anne Arundel Cnty.,* 339 Md. 261, 273, 661 A.2d 1157, 1163 (1995). The new trial judge, in his or her capacity as a trial judge, would, like Judge Purpura, have the inherent authority to address bifurcation. Similarly, Judge Turnbull currently serves as a judge on the Circuit Court for Baltimore County and, therefore, he could have assigned the case to himself in the ordinary course of business. *See Strickland,* 407 Md. at 358, 965 A.2d at 895 ("[T]he assignment of Circuit Judges for trials or hearings is entirely within the province of Circuit and County Administrative Judges, subject only to the supervisory authority of the Chief Judge of the Court of Appeals and the administrative rules adopted by the Court of Appeals."); Maryland Judiciary, *Judges Currently Serving in the State of Maryland, available at* http://mdcourts.gov/hr/pdfs/judges_list_external.pdf. If he was presiding over the cases in his capacity as a trial judge, Judge Turnbull would not have been bound by Judge Purpura's prior decisions, but would have the authority, like any other trial judge presiding over a case, to rule on bifurcation. Nothing in the record, however, indicates that Judge Turnbull assigned the two trials to himself and, acting in his judicial, rather than administrative, capacity, ruled on the issue of bifurcation.[11]

---

11. Even assuming that Judge Turnbull did reassign the cases to himself to rule on the bifurcation issue and then reassigned the cases once

Judge Purpura was assigned to preside over the *Sullivan* and *Weinberg* trials.[12] As the trial judge presiding over those cases, Judge Purpura, after full hearings on the matter, exercised her discretion and determined that each trial should be bifurcated. Acting as the Administrative Judge, Judge Turnbull "reviewed the Motions to Bifurcate and the Opinions of Judge Purpura," vacated Judge Purpura's decisions to bifurcate the trials and nullified the severance of the issues in the trials. Only after Judge Turnbull had ruled on bifurcation did he reassign the cases to Judge Souder for trial. And, in the same Order, Judge Turnbull mandated that all motions for bifurcation be sent to him as Administrative Judge for ruling, thereby limiting the inherent authority of all trial judges of

---

more to Judge Souder, this would similarly be an abuse of his position. In his capacity as Administrative Judge, Judge Turnbull cannot pre-textually reassign a case to himself only to review and vacate the judicial ruling of another judge and then reassign the cases again. While the authority to assign cases is explicitly provided to an Administrative Judge, it cannot be used to act as an appellate court reviewing another judge's ruling or to unilaterally usurp the judicial discretion of other trial judges.

12. Nothing in the record indicates that when the *Sullivan* and *Weinberg* cases were assigned to Judge Purpura, Judge Turnbull retained the authority to decide whether to bifurcate the trials. In fact, in the August 9, 2012 memorandum from Judge Turnbull specially assigning the *Weinberg* case to Judge Purpura, Judge Turnbull expressed that "[t]he purpose of this memo is to inform all departments that any future filings should be directed to your attention." Although St. Joseph Medical Center's motion to bifurcate, filed July 9, 2012, was pending when Judge Purpura was assigned the *Weinberg* case, Dr. Midei's September 27, 2012 motion was filed after the case was assigned, and the language in the memo assigning the *Weinberg* case, "*any* future filings," does not appear to indicate that Judge Purpura's assignment was limited in scope. Amici asserted at oral argument before this Court that the October 2011 memorandum from Judge Turnbull, which states that motions to bifurcate "[s]hould be ruled on by the Administrative Judge," indicates that when he assigned the two trials to Judge Purpura, she was not given the authority to rule on bifurcation. Assuming *arguendo,* that the memorandum applied to trial judges, as this opinion indicates, however, it is not within the power of the Administrative Judge to unilaterally strip trial judges of their discretion over the judicial decision of whether to bifurcate the issues in a case.

the Circuit Court for Baltimore County to decide cases within the court's jurisdiction.

As noted above, granting a writ of mandamus or prohibition is an extraordinary measure, and we exercise our discretion to grant such a writ with "great caution." *In re Petition*, 312 Md. at 305, 539 A.2d at 676 (quotation omitted). Judge Turnbull's extraordinary actions, vacating Judge Purpura's Orders and requiring that all motions for bifurcation be sent to him, however, persuaded this Court to exercise its discretion and grant the writ. "The exercise of this Court's authority to issue an extraordinary writ was justified by the potential irreparable harm to the moving party and by the need to maintain the integrity of the legal system." *Angeletti*, 358 Md. at 711, 752 A.2d at 212.

Judge Turnbull's actions threatened the integrity of the judicial system, the authority of trial judges to preside over cases before them, and the public's trust in the courts. First, as noted above, bifurcation is a judicial decision affecting the rights and interests of litigants, and, as such, it is generally within the discretion of trial judges to rule on the matter. As noted above, the authority of circuit court judges is derived from the Maryland Constitution. *See* Md. Const. art. 4, §§ 1, 20, 21. And as indicated at oral argument before this Court, Judge Turnbull, in his capacity as Administrative Judge, could not, through his November 2 Order, trump the Maryland Constitution's grant of authority to circuit court judges to make judicial decisions in cases over which they preside. Judge Turnbull's usurpation of this authority threatened the integrity of the judicial system and is arguably the quintessential circumstance that warranted issuance of a writ to vacate his actions. *See In re Petition*, 312 Md. at 327, 539 A.2d at 687 (emphasis added) (citation omitted) ("An extraordinary writ is appropriate only when judicial power has been *usurped* or if there is a clear abuse of discretion."); *see also Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305, 310 (1967) (quotation omitted) ("[I]t is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary

remedy [of granting a writ of mandamus].");[13] *Ex parte King,*
23 So.3d 77, 79 (Ala.2009) (quotation omitted) ("[M]andamus is
appropriate in exceptional circumstances which amount to
judicial usurpation of power."); *In re Petition of State,* 603
A.2d 814, 815 (Del.1992) (quotation omitted) ("It is clear that
only exceptional circumstances amounting to a judicial usurpa-
tion of power will justify the invocation of the extraordinary
writ of mandamus."); *Liberty Coffee Co. v. Alberti,* 172 La.
572, 134 So. 748, 749 (1931) ("This court has repeatedly held
that it is only where the ... judge exceeds the bounds of his
jurisdiction, or is guilty of a usurpation, or an abuse of his
discretion, will it interpose its supervisory powers [by granting
a writ of mandamus or certiorari]."); *State v. Saari,* 152 Vt.
510, 568 A.2d 344, 347 (1989) (citations and quotation omitted)
("Mandamus is appropriately invoked to confine [a] court to a
lawful exercise of its prescribed jurisdiction or to compel it to
exercise its authority when it is its duty to do so but only
exceptional circumstances amounting to a judicial usurpation
of power will justify the invocation of this extraordinary
remedy.").

Additionally, as noted above, Maryland Rule 2–503(b) pro-
vides that a trial may be bifurcated for convenience or to avoid
prejudice. When bifurcating both the *Sullivan* and *Weinberg*
trials, Judge Purpura addressed both of these factors. In
*Weinberg,* Judge Purpura indicated that the trials were to be
bifurcated because a "single unified trial" would both be
"unwieldy" and would prejudice the defendant, Dr. Midei.
Similarly, in her opinion bifurcating the trial in *Sullivan,*
Judge Purpura indicated that bifurcation was "appropriate to
avoid unfair prejudice to the Defendants[,]" and would "serve
the convenience of the [c]ourt, the parties and the jury."

---

**13.** Although the United States Supreme Court's authority to grant writs
of mandamus and prohibition stems from the All Writs Act, 28 U.S.C.
§ 1651(a), in *In re Petition* we expressed that our authority to issue
writs of mandamus and prohibition are "equivalent to that granted to
the [United States] Supreme Court by [the All Writs Act]; that is, the
power to issue appropriate writs in exercise of our appellate jurisdic-
tion." 312 Md. at 302–03 n. 13, 539 A.2d at 675 n. 13 (citations
omitted).

When Judge Turnbull vacated Judge Purpura's bifurcation Orders he expressed that he did so "in the interest of judicial economy," and to prevent bifurcation from "adversely effect[ing] the case flow management." Nothing in Judge Turnbull's Order indicates that prejudice to the parties was a consideration. His actions, therefore, sent a message to litigants that the internal management of the court trumps a trial judge's determination to bifurcate a trial pursuant to Rule 2–503(b).

Moreover, Judge Turnbull's actions undermined the authority of trial judges in the Circuit Court. As Respondent notes, in general, bifurcation may be challenged on appeal after a final judgment in the case. Here, Judge Turnbull prevented the bifurcated trials from going forward, as contemplated, to final judgment in the *Sullivan* and *Weinberg* cases. In his capacity as the Administrative Judge, Judge Turnbull *sua sponte* reviewed Judge Purpura's decisions to grant bifurcation, concluded that bifurcation affected "case flow," and issued an Order vacating Judge Purpura's bifurcation decisions. In the same Order, Judge Turnbull also reassigned the two trials to another judge. Judge Turnbull's administrative Order undermined the authority of other trial judges of the Circuit Court. In future cases, the message to litigants would be that judicial rulings of trial judges which affect "case flow" will be overturned and the case will be reassigned by the Administrative Judge if he disagrees with a trial judge's ruling on a motion.

■ Judge Turnbull's actions further injured the integrity of the judicial system by usurping appellate authority and undermining the proper review of a grant or denial of bifurcation. By reviewing Judge Purpura's grant of bifurcation and vacating her Orders, Judge Turnbull effectively acted as an appellate court in this context. Nothing in the Maryland Constitution, statutory law, or the Maryland Code authorizes an Administrative Judge to act as an appellate court in this context. Additionally, when properly brought on appeal, a trial judge's ruling on whether to grant or deny bifurcation is reviewed on an abuse of discretion standard. *See Myers*, 88

Md.App. at 448, 594 A.2d at 1251–52; *see also Md. Green Party v. State Bd. of Elections,* 165 Md.App. 113, 142, 884 A.2d 789, 806 (2005). When, in effect, acting as an appellate court to consider Judge Purpura's ruling, Judge Turnbull did not consider whether Judge Purpura abused her discretion but rather overruled Judge Purpura's Orders because, in his view, bifurcation "[was] not necessary," "[was] not in the interest of judicial economy," and because it would "adversely effect the case flow management."

Additionally, Judge Turnbull's actions could potentially expend significant time, money and resources, and leave Petitioners and others similarly situated without an adequate legal remedy. Respondent argues that Petitioners could get relief by challenging that Judge Turnbull did not have the authority to overrule Judge Purpura and that Judge Turnbull erred in denying bifurcation through the normal appellate process. We disagree. Although, generally, the additional costs to litigants waiting to challenge a judicial ruling or order on appeal does not warrant the extraordinary writ of mandamus, *see Keene,* 330 Md. at 294, 623 A.2d at 666, the present matter, not unlike *Angeletti,* involves "extraordinary circumstances." *See Angeletti,* 358 Md. at 720, 752 A.2d at 217. As one of the Amici noted, there were "nearly 300" stent cases "active" in the Baltimore County Circuit Court. Judge Turnbull's actions, ordering that the Administrative Judge will decide all bifurcation issues even when he lacks the power to delegate exclusive authority to himself could require appeals and a new trial not only in the *Sullivan* and *Weinberg* cases, but in many of those nearly 300 pending cases. For both the judicial system and Petitioners, who are defendants in many of those cases, this would result in a substantial expenditure of time, money and resources. "Should such expenses have been endured on account of" the Administrative Judge acting beyond the scope of his authority, "they would be losses as monumental in their unfairness as in their sheer amount." *Angeletti,* 358 Md. at 720, 752 A.2d at 217 (citations omitted).[14]

---

14. We also note that the language in the November 2 Order indicates that any motion to bifurcate, not just those in the stent cases, will be

HARRELL, J., concurs and dissents.

McDONALD, J., dissents.

Mostly Concurring and a Tiny Bit Dissenting Opinion by HARRELL, J.

Although I joined the Court majority as regards most of its Order of 15 March 2013, I declined to join that part of the Order that overturned Judge Turnbull's reassignment of the affected cases from Judge Purpura to Judge Souder. Necessarily then, I join the Court's opinion, except for its attempted justification for reinstating the assignment of the cases for trial to Judge Purpura.

The reason I departed from the Majority as to this part of the "remedy" fashioned by the Court is that Judge Turnbull, as the Administrative Judge for the Circuit Court for Baltimore County, has the authority to assign and reassign cases for trial. The Majority concedes this. *See* Majority op. at 280–81, 68 A.3d at 836 ("Pursuant to Rules 16–101 and 16–103, Judge Turnbull had the authority both to assign the *Sullivan* and *Weinberg* cases to a trial judge and to reassign the cases in the ordinary course of the administrative management of the court." (citations omitted)). That Judge Turnbull improperly and without apparent authority overruled Judge Purpura's ruling on bifurcation (and regardless of whether he reassigned the cases to himself—constructively or actually—to accomplish that purpose) does not impair or eliminate his

ruled on by the Administrative Judge. Therefore, by virtue of the November 2 Order, Judge Turnbull infringed on the discretion of the other seventeen judges of the Circuit Court for Baltimore County in all kinds of cases. *See* Md.Code (1973, 2006 Repl.Vol., 2012 Cum.Supp.), § 1–503 of the Courts and Judicial Proceedings Article (In 2012, when Judge Turnbull issued his Order, there were 18 judges of the Circuit Court for Baltimore County). Moreover, the Order, which appears to apply to all bifurcation motions, including those filed during trial, is inconsistent with Maryland Rule 16–102(b)(i) which states that a motion "made or filed during the course of a trial or on the day a case is set for trial ... shall be disposed of by the *trial judge*." (Emphasis added).

conceded right to reassign the cases to Judge Souder, for whatever or no reason. Thus, while I am in agreement with the Majority that it is correct for this Court to vacate the portions of Judge Turnbull's orders regarding bifurcation, I can find no authority or reason for us to overrule his reassignment of the cases to Judge Souder. There is no indication on this record that Judge Turnbull's reassignment of the cases to Judge Souder was taken with any ulterior motive or to frustrate the proper trying of the cases. As the Majority also concedes, Judge Souder could reconsider Judge Purpura's reinstated disposition of the bifurcation request, but is not compelled to do so or to change the outcome. *See* Majority op. at 281, 68 A.3d at 836 ("[I]f the case had been reassigned, the judge hearing the case in place of Judge Purpura would likely not have been bound by her rulings, including the ruling on whether to bifurcate the cases. In other words, the issue of bifurcation could be reconsidered.").

Dissenting Opinion by McDONALD, J.

In the Court's consideration of this matter, three distinct issues have become entangled: (1) the merits of the decision to bifurcate the trials in these cases; (2) the direction—or lack of direction—that our rules provide as to the powers and duties of an Administrative Judge; and (3) the standard of review that this Court applies when considering a petition for a writ of mandamus or prohibition. The first issue is not actually before us; the second question is a key to our decision here, but not adequately addressed; and the third issue counsels against the action we took.

In my view, when a case is specially assigned, the decision whether to bifurcate the trial to avoid prejudice to a party, as well as to preserve judicial economy, is a decision best made by the judge who, by virtue of the special assignment, is likely to have the greatest familiarity with the relevant facts to make a prudent decision. The particular decision that Judge Purpura made in these cases, as best I can tell from the record

before us, seems a very reasonable one.[1] Thus, I may well have made a different decision than that made by the Administrative Judge here.

But I would not have granted the petition. Mandamus is reserved for extraordinary circumstances in which it is clear that the lower court has committed legal errors or abused its discretion when no other remedy is available.[2] It seems difficult to say that the Administrative Judge has done either in this case in light of the rules concerning the duties of Administrative Judges and the procedures adopted under one of those rules.

Maryland Rule 16–202 directs an Administrative Judge to develop a "case management plan" to manage the work flow in a circuit court and to adopt administrative procedures to carry out that plan—procedures that, among other things, are to address the disposition of motions and preliminary matters. The rule provides, in pertinent part:

a. Generally. The County Administrative Judge in each county shall supervise the assignment of actions for trial to achieve the efficient use of available judicial personnel and to bring pending actions to trial and dispose of them as expeditiously as feasible. *Procedures instituted in this regard* shall be designed to:

. . . .

(2) *insure the prompt disposition of motions* and other preliminary matters;

. . . .

b. Case management plan; information report. (1) The County Administrative Judge shall develop and, upon ap-

---

1. As the majority notes, a decision to bifurcate is subject to later review by an appellate court for abuse of discretion. *Myers v. Celotex Corp.* 88 Md.App. 442, 448, 594 A.2d 1248 (1991); *Newell v. Richards,* 83 Md.App. 371, 574 A.2d 370 (1990), *rev'd on other grounds,* 323 Md. 717, 594 A.2d 1152 (1991). The merits of Judge Purpura's decision are not currently before us.

2. *Philip Morris, Inc. v. Angeletti,* 358 Md. 689, 718, 752 A.2d 200 (2000).

proval by the Chief Judge of the Court of Appeals, implement and monitor a case management plan for the prompt and efficient scheduling and disposition of actions in the circuit court. The plan shall include a system of differentiated case management in which actions are classified according to complexity and priority and are assigned to a scheduling category based on that classification. . . .

(emphasis added).

While the Differentiated Case Management Plan of the Circuit Court for Baltimore County, adopted pursuant to section (b) of the rule, does not address motions to bifurcate, that court apparently has written administrative procedures, presumably developed to comply with section (a) of the rule, that allocate various matters and decisions to certain judges (and, indeed, recognize that certain decisions are the province of a judge specially assigned to a case). Those written procedures designate the Administrative Judge as the judge to decide "motions to bifurcate." At least one other circuit court appears to direct motions to bifurcate to its Administrative Judge for decision. *See* http://www6.montgomery countymd.gov/cibtmpl.asp?url=/Content/CircuitCourt/Court/ AdministrativeAides/AdministrativeAides.asp (listing motions to bifurcate among those reviewed by the Administrative Aides for decision by the Administrative Judge of the Circuit Court for Montgomery County pursuant to its Differentiated Case Management Plan).

On its face, Rule 16–202 thus appears to allow for the allocation of bifurcation motions—or at least some subset of them [3]—to a county Administrative Judge for decision. And the current written procedures, issued in accordance with our rule and prior to these cases, do just that. If we assume that the Administrative Judge in this case acted in good faith reliance on the Rule 16–202 and the more specific administrative procedures adopted to carry out that rule—and there is

---

**3.** It is quite possible that a Case Management Plant might distinguish different types of "motions to bifurcate" some of which are best entrusted to a judge specially assigned to a case, as suggested earlier, and some of which are best decided by the Administrative Judge.

no reason in this record to think otherwise—then it seems difficult to characterize that decision as a "gross abuse of discretion" that threatens irreparable harm to the legal system.[4] The decision made by the Administrative Judge in this matter may not be the same decision that I would have made. But just because an appellate judge would have made a different decision than the one made by a trial court or an Administrative Judge does not necessarily make the decision reversible, much less subject to the extraordinary remedy of mandamus. *Forster v. Hargadon*, 398 Md. 298, 306, 920 A.2d 1049 (2007) (writs of mandamus or prohibition to be issued only in extraordinary cases and "with great caution").

This matter invited us to clarify the appropriate function of an Administrative Judge—an invitation we have not accepted. For example, it is not clear whether the majority opinion is stating that the decision of a motion to bifurcate is necessarily reserved to a trial judge, *see* Majority Op. at pp. 277–80, 68 A.3d at 834–35, or is conceding that such motions can be directed to an Administrative Judge under a Differentiated Case Management Plan, *see* Majority Op. at p. 280 n. 10, 68 A.3d at 836 n. 10. Perhaps it is incumbent upon this Court to provide some guidance on the duties of an Administrative Judge with respect to motions to bifurcate, by rule amendment or otherwise.

At the time this matter came to us, the case had already been re-assigned to another judge, a decision that petitioners conceded was a prerogative of the Administrative Judge.[5] In the end, I would have denied the petition. But, in remanding the case for further proceedings not inconsistent with our decision,[6] I would have clarified our rule and indicated that the

---

**4.** *Philip Morris, Inc. v. Angeletti, supra,* 358 Md. at 721–22, 752 A.2d 200.

**5.** *Strickland v. State,* 407 Md. 344, 359, 965 A.2d 887 (2009) (Administrative Judge has "full authority to assign judges for trials or hearings").

**6.** *Cf.* Maryland Rule 8–604(a)(5), (d) (appellate court may remand without affirming, reversing, or modifying judgment, but with directions and opinion binding on further proceedings).

trial judge specially assigned to the case had discretion to revisit the motion to bifurcate.[7]

---

7. *E.g., Walker v. State,* 12 Md.App. 684, 688–90, 280 A.2d 260 (1971) (newly assigned judge may reconsider pre-trial rulings by previously assigned judge).